**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Ralph E. (Sam) SHRYOCK,
Defendant-Appellant.**

**No. 11000.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 29, 1980.

HOGAN, Judge.

A jury has found defendant guilty of exhibiting a dangerous and deadly weapon in a rude and threatening manner as defined and denounced by § 571.115, RSMo 1978, V.A.M.S. His punishment has been assessed at imprisonment in the county jail for a period of 50 days. Defendant appeals.

· The record shows that during the early evening of August 14, 1977, one Johnnie Mitchell, his wife and children, were driving east on Highway 38 near its intersection with Highway 17 in Texas County. Mr. Mitchell and his wife had been visiting relatives and were on their way home.

As Mr. Mitchell approached the intersection, the defendant "hollered at [him]," asking him to stop. Mitchell stopped his vehicle and got out. Defendant asked if Mitchell "lived in the house that was behind McGowan's"[1] and Mitchell replied that he did. Mitchell asked why the defendant had sent the Texas County Sheriff to the Mitchell residence earlier in the day. Defendant replied that "somebody had been shooting through [defendant's] house and [defendant] thought it was [Mitchell]." According to Mitchell, he and defendant "was standing there talking and [defendant] pulled a gun out from behind him and brought it around and cocked it and pointed it straight at my head." Defendant then told Mitchell "he was [going to] blow [Mitchell's] damned head off." Mitchell "started to step toward [defendant]" but turned around, got back in his vehicle and told defendant he was going to call the Sheriff. The general tenor of Mitchell's testimony was that he was not acquainted with the defendant and did nothing during the encounter to threaten him. Being asked if he could describe the weapon, Mitchell answered "Yes. It was

1. "McGowan's" is a "package store" which is "between a quarter and a half a mile" from defendant's home. The complaining witness, asked where he lived, replied "[T]he other side of McGowan's package store on a gravel road."

a .45 caliber automatic, looked like an Army issue, well worn. Had—I owned one before myself. I know what they look like."

Mitchell's wife corroborated his testimony. Mrs. Mitchell said she heard part of the conversation; defendant wanted to know if "we was the one that lived up there behind McGowan's"; she saw the pistol, and "[i]t was the flat-on-both-sides kind." The defendant had the pistol; he pointed it at her husband and said "[s]omething to the effect that he'd blow [her husband's] head off." Thereafter, her husband "started to take another step toward [defendant] and then he got back in the [Mitchell] truck."

The defendant's version of the occurrence was that he was in his front yard near the intersection of Highways 38 and 17. Mitchell stopped his vehicle in the intersection, started "walking fast" toward him, and asked "what the hell did [defendant] mean sending the Sheriff up to his house that morning." Mitchell also said "I'll take care of you right now." Defendant had no "gun" on his person; he did have a jack handle, approximately 12 inches long, and "if it was facing somebody at a distance it would look like the end of a gun."[2] Defendant's interrogation then proceeded thus:

"Q. . . . Who, if anyone, was with you at that time?

A. James Little, in the Army.

Q. What is—where—who is Mr. Little? Is he a personal friend of yours?

A. Well, not a personal friend; just a lot of military people come down on the weekend.

Q. Okay. He's a military person at Ft. Wood?

A. Yes, sir."

There is additional, equally inarticulate testimony in the record, but what we have recited illustrates the nature and tenor of the cause.

■ Defendant has briefed and argued three points on appeal. Two of these points have to do with what counsel refers to as the trial court's refusal to grant a continuance "orally requested" upon the date of the trial. Rule 25.08, V.A.M.R., contemplates a *written* application showing good cause for a continuance, *State v. Boykins*, 399 S.W.2d 70, 73[3] (Mo.1966), no semblance of any such motion is to be found in this record, and the want of compliance with Rule 25.08 would in itself have been a sufficient ground to refuse defendant further time. *State v. Cuckovich*, 485 S.W.2d 16, 21 (Mo.banc 1972). However, in view of the trial court's unequivocal statement that "The Court's not going to continue the case today, . . . [the] case is going to go to trial," we shall, in the exercise of discretion, review the point briefly. As part of the same point, defendant contends that he was denied "effective assistance" of counsel because his court-appointed counsel was not given sufficient time to prepare a defense. § 571.115, RSMo 1978, V.A.M.S. (formerly codified as § 564.610), defines and denounces several discrete offenses as graded or "mixed" felonies, and undoubtedly defendant had a Sixth Amendment right to "effective" counsel. A contention of ineffective assistance of counsel may be raised on direct appeal, *State v. Lumsden*, 589 S.W.2d 226, 230[10] (Mo.banc 1979), and in the circumstances, we shall also review that argument, bearing in mind that when this case was tried on February 22, 1978, the question of "effective assistance" was determined by inquiry whether, on the whole record, a defendant's representation was so inadequate as to deprive him of a fair trial. *Sims v. State*, 496 S.W.2d 815, 817[2] (Mo. 1973), and see *Seales v. State*, 580 S.W.2d 733, 735 (Mo.banc 1979).

■ However stated, we consider the point to be without merit. The testimony we have quoted is literally all that was ever said about the witness defendant wished to

---

**2.** This testimony was volunteered; objection was made after the answer, but there was no motion to strike nor any request that the jury be instructed to disregard the answer. Failure to move to strike or exclude constituted a waiv-er of the objection. *State v. Owen*, 258 S.W.2d 662, 666[5] (Mo.1953). See also *Ashley v. Williams*, 365 Mo. 286, 293, 281 S.W.2d 875, 880[8] (1955); C. McCormick, Evidence, at 113 (2d ed. 1972).

call. There is absolutely no affirmative showing that Little would have corroborated the defendant, even though defendant was given an opportunity to make such proof when the court considered his motion for new trial. There was no proof that there was any probability of procuring his testimony; Mr. Little was a soldier, apparently, and the record suggests he was absent without leave from his post. In these circumstances, we believe there was no abuse of discretion in refusing further time to obtain Mr. Little's testimony. *State v. Boykins*, supra, 399 S.W.2d at 73–74[3][4, 5]; *State v. Lee*, 492 S.W.2d 28, 31[6][7] (Mo. App.1973).

Concerning defense counsel's opportunity to prepare, the record shows that defendant appeared on November 2, 1977, at his preliminary hearing with employed counsel of his own choosing. On November 21, 1977, defendant appeared in the trial court for arraignment, again with counsel of his own choosing. Counsel orally requested and was granted leave to withdraw. Defendant was ordered to appear on December 16, 1977, for a trial setting and was advised to retain an attorney. On February 22, 1978, the date of trial, defendant appeared without an attorney. There was no suggestion of indigency. The trial court announced it would refuse to continue the cause further; the defendant might represent himself or ask for the Public Defender's assistance. Defendant's response was: "Well, like to see if he couldn't have some pre-trial investigation; he needs some time to acquaint himself with the case." The trial court denied further time and defendant consulted with the Assistant Public Defender for an unspecified period. The Public Defender then approached the bench and announced:

"Your Honor, *defendant is ready* with the exception of a witness who is at Ft. Wood named James Little. Mr. Brower's trying to locate him right now. I would ask that if we can't get him today—he's supposed to be on base—that we could continue part of the defense evidence—at least his testimony, until tomorrow. *But*

*with that understanding* we'll proceed with the balance of the case today." (Emphasis added)

Some further inconclusive discussion followed and the cause proceeded to trial; defendant was convicted. A motion for new trial was filed. This motion was called on April 3, 1979. Defendant appeared with employed counsel. The Prosecuting Attorney testified to repeated attempts to advise the defendant to obtain the services of an attorney or the Public Defender. Defendant chose to offer no evidence, even though he was afforded the opportunity.

■ The time afforded counsel to prepare is but one of the factors to be considered in determining whether a criminal defendant has been denied "effective assistance" of counsel. Other factors to be considered are the gravity of the charge, the complexity of the possible defenses, the accessibility of witnesses and the possibility that the defendant is attempting to defeat or impede the orderly processes of the administration of justice. *Freeman v. Mabry*, 570 F.2d 813, 815 (8th Cir. 1978); *Wolfs v. Britton*, 509 F.2d 304, 309 (8th Cir. 1975).

■ Given the fact that the offense charged was of some gravity, it would be absurd to say there was anything complex about the case. The two simple elements of the crime charged are: 1) possession of a deadly weapon, and 2) exhibiting that weapon in a rude or threatening manner; the general defenses are privilege or defense of home or property, or, in some cases, protection of property. The Public Defender told the court he believed he was ready, and close examination of the record indicates to us that the Public Defender was as familiar with the case as the Prosecuting Attorney. Counsel's presentation of this point is unexceptionable by any standard; nevertheless, as we began, the point has no merit.

■ The other point briefed and argued is that the State made no case because it

produced no weapon. There may be cases in which the evidence concerning the object flourished or "exhibited" is so equivocal that the weapon should or must be produced, but when the evidence concerning the weapon is clear and unequivocal, production of the weapon is not essential. *State v. Nichols*, 262 Mo. 113, 116, 170 S.W. 1110, 1111[2] (1914); *People v. Herrera*, 6 Ill. App.3d 898, 287 N.E.2d 87, 88–89[1] (1972). There was substantial evidence from which rational jurors could find defendant guilty beyond a reasonable doubt; the State met its burden of proof and the judgment and sentence are accordingly affirmed.

BILLINGS, P. J., and MAUS, J., concur.