STATE of Missouri, Respondent,

v.

**Randy BREWER, Appellant.**

No. 42998.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 12, 1982.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 19, 1982.

Application to Transfer Denied
April 13, 1982.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, Mark L. Akers, Pros. Atty., Potosi, for respondent.

Shaw, Howlett & Schwartz, James J. Knappenberger, Clayton, for appellant.

LACKLAND H. BLOOM, Special Judge.

By amended information appellant Randy Brewer was charged with three felony counts. He was charged with assault in the second degree under § 565.060, RSMo 1978, in attempting to cause physical injury by means of a deadly weapon to Wayne Crump in Count I and to Kelly Skaggs in Count II. In Count III he was charged with exhibiting a deadly weapon in a rude, angry or threatening manner contrary to § 571.115, RSMo 1978. A jury trial in Madison County resulted in appellant's conviction on Counts I and II of the lesser included offense of assault in the third degree, a Class A misdemeanor under § 565.070.1(4), RSMo 1978, and on Count III as charged. The jury assessed his punishment on Count I at

four months in the county jail, on Count II at two months, and on Count III at six months. After his motion for a new trial was overruled and allocution granted, defendant was sentenced in accordance with the jury verdicts. The sentences were ordered by the court to run consecutively. From such verdicts and judgment appellant has perfected this appeal.

We have rearranged and combined the points on appeal raised by appellant. As restated they are as follows: (1) The evidence was insufficient to sustain either the assaults charged (Counts I and II) or the exhibiting charge (Count III); (2) the trial court erred in not requiring the State to elect between Counts I and II, the assault charges, or Count III, the exhibiting charge, and thus subjected appellant to multiple punishments for the same offense in violation of the United States and Missouri Constitutional prohibitions against double jeopardy; (3) Instruction No. 7 as to Count III was erroneously prejudicial in failing to instruct the jury as to the minimum sentence provided by statute for the offense charged; (4) the court committed prejudicial error in submitting Instruction No. 10 as it misled the jury in believing that the court could impose a fine upon appellant if the jury found him guilty on Count III; and (5) the court erred in submitting Instructions 8 and 9 to the jury on third degree assault as third degree assault is not a lesser included offense of exhibiting a deadly weapon in a rude, angry or threatening manner.

A review of the evidence is essential to a disposition of the points raised. All of the acts giving rise to this case occurred in Washington County in a cemetery on the outskirts of Potosi at approximately 12:30 a. m. on September 29, 1979. The charges were filed in the Circuit Court of Washington County and removed for trial to Madison County.

The cast of characters include, in addition to appellant Randy Brewer, his identical twin brother Danny Brewer; Randy's girl friend Anita Aubuchon; Wayne Crump and Robert Jacobsen, deputy sheriffs of Washington County; Kelly Skaggs, a Potosi police officer; Nancy Courtois, said to be Danny's girl friend; and various unnamed police personnel allegedly present some time during the occurrence giving rise to this case.

About 7 p. m. on September 28, appellant (hereinafter sometimes referred to as Randy) and his brother appeared at the Washington County Court House at Potosi with a single barreled 12 gauge shotgun in a 16 gauge body and inquired whether it was of legal length. A state trooper measured the weapon in the presence of Sheriff Deputy Crump and found it to be longer than the legal minimum and returned it to Randy who then left with his brother.

About midnight Randy and Danny drove into an A & W drive-in restaurant in Potosi where they apparently had some conversation with Anita Aubuchon and Nancy Courtois. At about 12:30 a. m. on September 29, Deputy Crump was cruising the Potosi area in his patrol car. As he was pulling into the parking lot of the Potosi police station, he saw two vehicles go by the station at a high rate of speed. He radioed Patrolman Skaggs, who he had previously seen travelling west on High Street in Potosi, and told him two cars were going through town at a high rate of speed. He then backed out of the parking lot and proceeded west on Highway 8. He could not see the vehicles but was later told they went into the Catholic cemetery located just outside the Potosi city limits. After driving a couple of hundred yards into the cemetery, he saw two parked automobiles, a Chevrolet and a Vega, and pulled within twelve to fifteen feet of the vehicles. The Vega had its bright lights on. There were two occupants of the Vega and two male subjects crossed in front of the headlights. He recognized them as Randy and Danny Brewer, whom he knew and had seen earlier that evening. They went to the left of his patrol car, Randy going further back some thirty-five to forty feet. Randy had a single barreled shotgun in his hand and was pointing it towards Crump and opening and closing it. Danny was between Crump's vehicle and

Randy. Crump testified that when he first pulled up Randy said he was "tired of me F___ing with him." Crump told Danny to tell his brother to put the shotgun down; however, he did not do so and Randy kept pointing the gun at him, breaking the gun down several times. He said Randy told him that "[i]f I didn't like it he had his gun and I had mine."

Patrolman Skaggs had pulled up and parked alongside Crump. The Brewer brothers went over and asked what he was doing there and told him to leave as he was outside his jurisdiction. Crump tried to get out of his patrol car but Danny slammed the door shut and then ran over and broke out a window in the Vega with his fist. Randy then walked between the vehicles and said "[i]f you don't think this gun works, I'll show you" and he pointed it in the air and fired it.

Crump then got out of his car and told Randy if he did not drop the gun he would kill him. Randy then dropped the gun and started to get into his car. Despite Crump's order to the contrary, Randy got into his car and drove away.

Deputy Jacobsen then arrived and shortly thereafter Randy returned. According to Jacobsen, Randy wanted to fight him and was jumping up and down. Randy was handcuffed by Jacobsen. He then calmed down and Jacobsen removed the handcuffs and told both Randy and his brother to go home and come to the sheriff's office in the morning. Jacobsen said he arrested them but did not take them into custody because the county jail was over the bed limit. Jacobsen identified State's Exhibit No. 1 as the shotgun he took that night. There was a spent cartridge in the chamber. No other shells were found. Jacobsen said when he arrived he found a confusing scene with four or five police cars and both girls crying.

Skaggs testified that when he got Crump's call he was eight or ten blocks north of High Street. When he was three to four blocks north he saw two vehicles go through the stop sign at the courthouse two or three lengths apart and going approximately forty-five to fifty miles per hour. When he turned into High Street they were five to six blocks ahead. A jeep pulled between him and the other vehicles and he lost sight of them. He stopped the jeep and asked the driver where the vehicles in front of him went and then returned to the cemetery, after advising Crump by radio that the cars had entered the cemetery. He pulled up alongside Crump's car but stayed in his car. "I was unable to make any move. They were holding a shotgun on the deputy." Randy was thirty to thirty-five feet from Crump's car holding a shotgun, breaking it down, closing it and pointing it at the deputy. They continued to argue and cuss at the officers. Randy walked up to Skaggs' car and pointed the gun at him, breaking it down the whole time. Crump tried to get out of his car and Danny slammed the door on his leg and then went back and broke a window in the Vega. After that Randy fired the gun in the air. He got in his car and left and came back four or five minutes later. Skaggs testified that he considered himself in danger.

Randy Brewer testified that he and Danny went to the cemetery about 12:30 a. m. in his Chevrolet while the two girls went in the Vega. He went through the town about forty miles per hour and arrived at the cemetery about three to five minutes before Crump arrived. He just saw a car approaching with its lights on but did not recognize it as a police car. It was dark except for the headlights of the vehicles. The police car did not have its red lights turned on and he did not know anyone was chasing him. He took the shotgun out of his car because he did not know who was coming up and thought he might get mugged. He knew Crump as he had had difficulties with him before. They began talking about how long the shotgun was and how it operated. He never pointed the gun at anyone intending to scare or frighten them and does not know if the gun was in fact ever pointed at anyone. He broke it down to show Crump how it broke down. No one told him he was speeding that night and he did not get a ticket until four

months later. He dropped the gun when ordered to by Crump and left the cemetery to cool off. When he came back he was handcuffed by Jacobsen but was later released and told he was free to go home. He was never told to come back to the courthouse the next day or that he was under arrest until he went to the courthouse the next day to get his gun. He never threatened Crump or Skaggs. He said he did not know why Crump asked him to give him the gun. "Maybe he thought I might shoot him or something."

Danny Brewer testified that when Skaggs arrived he and Randy went over and started talking to him. Skaggs wanted to know if the Brewers were the individuals who were speeding through town. He testified that he was driving the Vega with the two girls and going about thirty-five or forty miles per hour and did not run the stop sign at the courthouse. He denied slamming the door on Crump. "I pushed the door because him and my brother was arguing and I didn't know if Crump was going to pull the gun on me or pull it on him, and I pushed the door." He heard his brother fire the gun. Crump was out of the car at that time. Crump pulled his gun on Randy who then dropped the shotgun.

Anita Aubuchon testified that she was Randy's girl friend and that she and Nancy Courtois went voluntarily to the cemetery with the Brewers and were not kidnapped as the State may have insinuated. Nancy Courtois did not testify.

■ Appellant challenges the sufficiency of the evidence to sustain the convictions on all three counts. We have set forth the evidence in some detail. Giving full deference, as we must, to the State's evidence following verdicts of conviction, including all inferences favorable to the State arising from appellant's evidence, we conclude that the evidence was fully sufficient to warrant submission of all three counts to the jury and to sustain the jury's verdicts thereon. *State v. Overshon*, 528 S.W.2d 142 (Mo.App. 1975). In our view of the evidence the jury could well have found defendant guilty of second degree assault under § 565.060.1(1)

but the evidence also warranted submission of assault in the third degree. In order to sustain the charge of assault in the third degree, the jury must find that appellant recklessly engaged in conduct which created a grave risk of death or serious physical injury to Wayne Crump (Count I) and Kelly Skaggs (Count II) by pointing a loaded firearm at him. Section 565.070.1(4). The shotgun in the hands of appellant was undeniably loaded. Both Crump and Skaggs testified that appellant pointed it at them, broke it down, and repointed it a number of times. Under the circumstances a jury could reasonably find that pointing a loaded shotgun at two armed police officers was at least reckless and certainly was calculated to and did create a very grave risk of death not only to the police officers and girls present but to appellant and his brother as well.

■ As to Count III, the firing of the shotgun in the air accompanied by vulgar and abusive language clearly warranted the submission of the exhibiting count. *State v. Shryock*, 593 S.W.2d 906 (Mo.App.1980). Appellant's statement that "[i]f you don't think this gun works I'll show you" constitutes under the circumstances a threat within the meaning of the statutory offense. *State v. Overshon, supra; State v. Shryock, supra; State v. Hampton*, 580 S.W.2d 552 (Mo.App.1979). We accordingly reject appellant's challenge to the evidence on all three counts.

■ Appellant next contends that he was placed in double jeopardy in violation of the Missouri and United States Constitutions when at the close of all the evidence the trial judge denied his request to require the State to elect whether to proceed under Counts I and II, the assault charges, or Count III charging defendant with the offense of exhibiting a dangerous and deadly weapon in a rude, angry or threatening manner. As noted, defendant was convicted on Counts I and II of the lesser included offenses of assault in the third degree and as charged in Count III.

Appellant contends that if the convictions are permitted to stand he will suffer multiple punishments for the same offense, which admittedly is barred by the constitutional limitations of the United States and Missouri Constitutions. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Sours v. State*, 603 S.W.2d 592 (Mo.banc 1980); *State v. Haggard*, 619 S.W.2d 44 (Mo.banc 1981). Appellant relies on *State v. Cook*, 560 S.W.2d 299 (Mo.App.1977) decided by the Western Division of this court. In that case defendant was convicted in a court trial of homicide and on appeal he contended that he was found guilty of felony murder, the underlying felony being exhibiting a deadly weapon in a rude, angry or threatening manner. He contended that since the information on which he was tried failed to allege the underlying felony, the court was without jurisdiction to find him guilty of felony murder. The court in affirming the conviction found that the trial court had in fact found defendant guilty of conventional second degree murder and rightly pointed out that the use of the firearm in a rude, angry or threatening manner under the circumstances did not constitute a distinct and separate felony but "was of such a fleeting nature that it was a distinct part of and inseparably related to the overall physical act required to perpetuate the homicide." *Id.* at 304. The case clearly did not involve double jeopardy issues. Had both the homicide and exhibiting actions been charged as separate offenses, it is logical to expect that the double jeopardy prohibition would have barred a multiple conviction or punishment.

In the present case, however, as we view the evidence, it is sufficient to isolate and submit to the jury two distinct and independent statutory offenses, (1) assault and (2) exhibiting. Although the time lapse between the two was relatively short, the jury could still find under the evidence that the assault charges and the pointing of the loaded shotgun at Crump and Skaggs constituted separate offenses. On the one hand appellant created a risk of death to the persons present by pointing a loaded shotgun at them under circumstances fraught with great danger, and on the other hand, moments later, undertook to fire the weapon into the air accompanied by threatening language and actions. Each of these acts constituted a separate and independent statutory offense, each having an element not common to the other. *Sours, supra* at 604. In the case of the assault charge, a finding that there was a "grave risk of death" and in the exhibiting charge that it was performed in a rude, angry or threatening manner. We do not find it contradictory to point out that had the gun fired while being pointed at Skaggs or Crump and caused death or injury to either, that under such circumstances appellant could not be convicted and punished for the separate offenses of homicide or assault and exhibiting, the latter in that event being merged in the former as an instantaneous act.

Appellant next alleges error in the giving of Instruction No. 7, as to Count III, particularly the portion setting forth the punishment to be assessed by the jury in the event they find defendant guilty of exhibiting a deadly weapon in a rude, angry or threatening manner. That part of the instruction stated:

"... If you do find the defendant guilty under Count III of exhibiting a deadly weapon in a rude, angry or threatening manner, you will assess and declare the punishment at:

1. Imprisonment in the division of corrections for a term of years fixed by you, but not less than two years and not to exceed five years, or

2. Imprisonment in the county jail for a term fixed by you, but not to exceed one year."

■ Appellant properly states that the minimum range of punishment provided by § 571.115, RSMo 1978, and set forth in MAI 31.22 is "not less than fifty days nor more than one year." The jury assessed the punishment at six months in the county jail.

Conceding the error in that portion of the instruction, our duty is to determine its prejudicial effect. Supreme Court Rule 28.-02(e). It is clear that instructional error as to the range of punishment is not per se prejudicial. *State v. Brown,* 554 S.W.2d 574, 579–80 (Mo.App.1977).

■ The cases relied upon by appellant [1] involved convictions in excess of or contrary to lawful punishments in instances where the court improperly instructed as to the minimum or maximum sentences which the jury could impose. In the instant case we perceive no conceivable prejudice to appellant. The jury assessed his punishment within the authorized limits and less than the maximum. In fact the jury could have been misled into assessing less than the authorized minimum of fifty days under the given instruction, an option which was only favorable to appellant. In *State v. Rollins,* 449 S.W.2d 585 (Mo.) *cert. denied,* 399 U.S. 915, 90 S.Ct. 2220, 26 L.Ed.2d 573 (1970), an instruction authorizing punishment at two to twenty years for a narcotics violation was given when in fact the proper range was five years to life. The court held the instruction not to be prejudicial stating:

> "The instruction should have fixed the range of punishment at 'not less than five years nor more than life imprisonment.' However, appellant may not complain. The error was favorable to appellant." *Id.* at 591.

We hold the error is not prejudicial.

■ Appellant also complains that the giving of Instruction No. 10 was prejudicial error. Instruction No. 10 was adapted from MAI–CR 2.60 and advised the jury as to the court's options in fixing punishment if they found the defendant guilty under the various verdict-directing instructions of the court. The challenged part was included in the following portions:

> "[t]he court may, under the law, sentence the defendant to either:
> 1. Imprisonment for a term fixed by the court, but not to exceed the term assessed and declared by the jury in its verdict, or

> 2. The payment of a fine, the amount of which would be determined by the court in accordance with applicable statutes, or
> 3. Both such imprisonment and the payment of such a fine.
> In your deliberations your duty is to determine whether the defendant is guilty or innocent, and, if you find him guilty, to assess and declare the punishment as directed in other instructions given you."

Appellant contends that under the notes to MAI–CR 2.60 this instruction should not have been given inasmuch as the exhibiting charge (Count III) was a non code offense and the exhibiting statute which provides for the penalties to be imposed upon conviction does not provide for a fine. He urges that the instruction misled and confused the jury into believing that upon conviction of Count III the court could assess a fine. The State apparently concedes the reference to Count III in the instruction was error but suggests that it cannot be prejudicial under the confines of this case. We agree. The instruction was advisory, informing the jury as to the court's sentencing alternatives in the event of a guilty verdict. The jury was specifically instructed in Instruction No. 10 that it was their duty to determine guilt or innocence and declare the punishment in accordance with the other instructions of the court. That the jury performed this function and duty, both as to guilt and punishment, compels us to find, absent any evidence or reason to the contrary, that appellant was in no way prejudiced by the fact that the jury was misled in believing that if they found the defendant guilty of exhibiting under Count III and fixed his punishment, as they did, at four months in the county jail, that the court would in fact reduce the punishment to a fine. We must accept the jury's verdict on its face and find no reason to believe that in assessing punishment the jury was improperly motivated by the "fine" reference in Instruction No. 10 in fixing what it thought to be proper punishment under the verdict-directing instruction as to Count III.

---

1. *State v. Hurt,* 285 S.W. 976 (Mo.1926); *State v. Duddrear,* 309 Mo. 1, 274 S.W. 360 (1925); and *State v. Sheets,* 564 S.W.2d 623 (Mo.App. 1978).

We have taken note of the case of *State v. Blake*, 620 S.W.2d 359 (Mo.banc 1981), decided by the Supreme Court on September 8, 1981, after this case was briefed on appeal. In that case the Supreme Court took cognizance of the instructional problems arising out of §§ 557.036.2, 558.011, 560.016 and MAI–CR2d 2.60. Section 557.-036.2 requires the court to instruct the jury as to the range of punishment. Section 558.011 sets forth the range of terms of imprisonment for the various code offenses and § 560.016 provides for the range of fines which may be imposed on a person convicted of one of the various classes of misdemeanors or infractions. MAI–CR2d 2.60 instructs the jury as to sentencing options available to the court, including the imposition of a fine in appropriate cases in the event the jury returns a guilty verdict under the verdict-directing instructions of the court.

The Supreme Court has pointed out the problems arising out of the use of MAI–CR2d 2.60 in its present form and has called upon the Committee on Pattern Criminal Charges and Instructions to review the applicable instructions. *State v. Hunter*, 586 S.W.2d 345 (Mo.banc 1979); *State v. Koetting*, 616 S.W.2d 822 (Mo.banc 1981); *State v. Blake, supra.*

In *Blake* the court reversed the case for retrial on other grounds and suggested on retrial a modification of the verdict director to instruct the jury that they have, in addition to authority to impose a term of imprisonment, the alternative of recommending that the court assess a fine in lieu of imprisonment or in addition thereto.

The problem exists in this case. Instruction Nos. 8 and 9 properly instructed the jury as to the range of punishment for assault in the third degree pursuant to MAI–CR2d 19.06.1. The difficulty arises, as in *Blake*, by the giving of Instruction No. 10, modified to conform to MAI–CR2d 2.60, setting forth the options available to the court in the event the defendant is found guilty. As we view *Blake*, MAI–CR2d 2.60 was authorized at the time of trial and although continued use in the present form

appears questionable, reversal in this case is not mandated.

Appellant's final contention is that the court erred in submitting the issue of assault in the third degree (Instructions 8 and 9) as a lesser included offense of exhibiting a deadly weapon in a rude, angry or threatening manner. The difficulty with appellant's position is that the court did no such thing. Instructions 8 and 9 submitting assault in the third degree were on their face submitted as lesser included offenses of second degree assault submitted in Instructions 5 and 6. The evidence certainly warranted and required the submission of the lesser included third degree assaults and they were properly submitted under § 556.-046.

Finding no error, we accordingly affirm the judgment.

STEWART, P.J., and STEPHAN, J., concur.