STATE of Missouri, Respondent,

v.

Willie D. WHITEHEAD, Appellant.

No. 47323.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1984.

Application to Transfer Denied
Oct. 9, 1984.

Shaw, Howlett & Schwartz, James J. Knappenberger, Clayton, for appellant.

John Ashcroft, Atty. Gen., Dan J. Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES J. GALLAGHER, Special Judge.

Appellant appeals from a conviction, in a jury waived trial, for assault first degree in Count I by stabbing James Roberts with a Bowie-style knife with a six inch blade knowingly causing serious physical injury, and in Count II for unlawful use of a weapon by exhibiting a weapon readily capable of lethal use, a .357 magnum, in a rude, threatening or angry manner. Appellant was also charged as a dangerous offender. After the pre-sentence investigation report was received the appellant, a 68 year old male, was sentenced to consecutive terms of fifteen years on the assault first degree conviction and to five years on unlawful use of weapon offense.

The incident occurred at a lounge in St. Louis County. The victim of the stabbing, James Roberts, entered the lounge at approximately 9:00 p.m. on the evening of December 13, 1982. Roberts was a liquor salesman for a wholesale distributor, had been in the lounge on previous occasions, knew the owner and was acquainted with the appellant, Willie Whitehead. Roberts testified that as he was entering the lounge a man came rushing out with Whitehead behind talking about "killing" or "whooping" the man. Roberts intervened and told appellant to leave the fleeing man alone, to go back and sit down or go home. The appellant replied "okay" and "thanks", returned to the bar and sat down. Roberts and Whitehead did not sit together. Approximately ten minutes later appellant came over to Roberts and said, "I'm going to kill you." Appellant pulled out a gun. Roberts fearing for his safety bumped appellant's arm and the gun slid across the floor. Undaunted, the appellant then pulled a knife, stabbed Roberts who fell to the floor. The appellant again threatened to kill Roberts and tried to stab him again. Roberts was kicked and cut twice more as he tried to defend himself. Appellant then retrieved the gun, pointed it at Roberts, again threatened to kill him and finally walked out the door. One final threat was uttered by the appellant stating as he departed, "I'm going to call my lawyer." The injuries sustained by Roberts required hospitalization for nineteen days and he is still partially disabled from the stabbing.

A witness, Craig Marsaw, had been in the lounge about one hour before the incident. He saw appellant arguing with a man who got up to leave with appellant following. According to Marsaw, Roberts followed, broke up the argument and returned to the bar. Ten minutes later Marsaw noticed the appellant Whitehead and the victim Roberts scuffling and saw the appellant stab Roberts. He also saw the appellant leave with the gun.

The appellant testified that as he was leaving the lounge Roberts was coming in. Roberts remarked to appellant that he was tired of appellant telling people that Roberts had put something in appellant's drinks. According to the appellant Roberts grabbed appellant, threw him down and a scuffle ensued. As the two men fell to the floor Roberts fell on the knife which appellant had in his hand. Appellant testified he was high at the time, having had lots to drink. During the scuffle, appellant claims to have heard something fall. When he got up, he saw the gun, picked it up and left the lounge to return to his car.

The police arrived, found the victim on the floor bleeding and called an ambulance. They were informed that appellant's car was in the parking lot. As the police officers approached the vehicle, appellant was found lying on the front seat. He refused to open the locked doors, therefore, one of the officers broke out a window. The appellant was removed and arrested. At this time a knife was observed on the back floor. The gun was not noticed at this time. The arresting officer, although he observed the knife, did not process the car, leaving this task to a detective. He photographed the car at the scene, seized the

knife, found and seized a knife sheath and a gun with six rounds in it from the front floor of appellant's car. In trial, the gun was described as a weapon capable of lethal use. No warrant had been obtained for the search of the vehicle.

Appellant contends: (1) the state failed to make a submissible case; (2) the trial court should have granted a new trial, sua sponte, because of newly discovered evidence presented in the pre-sentence report; (3) the sentence is cruel and unusual punishment for appellant, a sixty-eight year old man; (4) it was double jeopardy to charge appellant with assault and an unlawful use of weapons offense; and (5) the seizure of a knife and gun from appellant's car was improper without a search warrant.

On appeal from a conviction, the evidence and all reasonable inferences are viewed in a light most favorable to the state on questions of sufficiency of the evidence. *State v. Williams*, 623 S.W.2d 552 (Mo.1981); *State v. Porter*, 640 S.W.2d 125 (Mo.1982). The evidence previously detailed will not be repeated. Appellant does not specify any element of proof lacking in the weapons charge. Concerning the assault, he argues self-defense and/or intoxication. The elements of the weapon and assault charges set forth under Sections 571.030.1(4) and 565.050.1(1) respectively are clearly supported in the evidence. The matters of defense were resolved by the trial court's conviction. There is no merit in appellant's argument on the sufficiency of the evidence.

Immediately prior to sentencing the trial court was provided with a pre-sentence investigation of the appellant. He contends this report compiled by the probation officer presents a different version of the events leading up to the stabbing of James Roberts and, therefore, the trial court should have granted a new trial sua sponte on the basis of newly discovered evidence. Appellant's claim of error is not supported by the facts or the law. The pre-sentence investigation states that the circumstances of the offense set forth

therein were compiled from the police report. Appellant does not contend that the police report was not produced for trial preparation or that witnesses listed therein were unavailable. Nevertheless, we shall consider the language of the pre-sentence report deemed important to defendant's contention. It states in part: "The white male subject began to leave and Whitehead followed him. At this time the victim, James Roberts, pulled Whitehead back into the bar and this caused an argument between the two of them." From this it is argued that the victim instigated the fight, materially contradicting the State's evidence in this regard and, therefore, the trial court, upon reviewing the pre-sentence report should have granted a new trial sua sponte. This issue was not raised before the trial court, consequently, its review is limited to plain error under Rule 29.12(b).

Should such evidence be presented it would add little to the appellant's defense since he offered evidence in trial that the victim was the aggressor. Furthermore, the appellant engages in an elaborate series of hypotheses designed to excuse his admitted failure to comply with the settled law as to when newly discovered evidence may serve as the basis for granting a new trial. The fact is that the appellant has failed to show: "First, that the evidence first came to his knowledge since the trial; second, that it was not owing to want of due diligence that it did not come sooner; third, that it was so material that it would probably produce a different result if the new trial were granted; fourth, that it was not merely cumulative; fifth, that the object of the testimony was not merely to impeach the character or credit of a witness; sixth, the affidavit of the witness himself should be produced, or its absence accounted for." *State v. Brotherton*, 266 S.W.2d 712, 718 (Mo.1954). See also, *State v. Williams*, 652 S.W.2d 102, 114 (Mo. en banc 1983).

It is, of course, possible to speculate, as does the appellant, to the existence of other witnesses who might give contradictory testimony. But this is only supposition and

does not satisfy the legal requirements as to when newly discovered evidence may serve as a basis for a new trial. The trial court did not commit plain error for failure to grant a new trial, sua sponte, based solely on the language of the pre-sentence report.

■ Appellant also claims error arising out of the sentence of fifteen years imposed on the sixty-eight year old appellant for the assault with the consecutive terms of five years for the unlawful use of a weapon. It is alleged that this constitutes cruel and unusual punishment in violation of the United States Constitution, VIII Amendment. It is urged that the appellant is in need of alcohol rehabilitation. We note first that the sentence is well within the terms authorized by law. The appellant was charged as a dangerous offender, with a Class A and Class D felony. Punishment within the statutory limits is not cruel and unusual because of its duration unless it is so disproportionate under the circumstances as to shock the moral sense of reasonable men. *State v. Walker*, 618 S.W.2d 43 (Mo.App.1981). Appellant's pre-sentence report reveals a man with six prior felony convictions many of which were aggressive and weapon related. Although the appellant contends that a number of his previous arrests were alcohol related, his past good intentions to abstain and reform have been short lived and without success. The investigator, for good reason, classified the appellant as a threat to the community. Thus the sentence imposed does not shock the moral sense of reasonable men and was well within the authority and discretion of the trial judge even in light of the appellant's age.

Appellant claims that his two felony convictions arose out of a single continuing course of conduct thus violating his constitutional protection against double jeopardy and the Missouri statutory limitation on convictions for multiple offenses in a continuing course of conduct, Section 556.-041(4), RSMo.

He was charged in Count I with assault in the first degree in that he knowingly caused serious physical injury to Roberts by stabbing him. The facts, previously stated in detail, clearly support this charge and conviction. The appellant in Count II was charged and convicted of exhibiting a weapon capable of lethal use, a .357 magnum, in a threatening manner. The threatening use of the gun was an occurrence separate and distinct from the stabbing in statutory requirements and in essential facts.

■ Missouri follows the separate or several offense rule rather than the same transaction rule. *State v. Treadway*, 558 S.W.2d 646 (Mo. en banc 1977). In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), it was held, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182, cited in *State v. Sprous*, 639 S.W.2d 576, 577 (Mo.1982).

■ It is also stated that where a defendant is charged with several crimes in the same series of events and each crime requires proof of a fact distinct from the others, then there is no double jeopardy even if there is some overlap in the proof necessary to establish the crimes. *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 1293, 43 L.Ed.2d 616 (1975); *State v. Blackmon*, 664 S.W.2d 644, 648 (Mo.App. 1984).

■ This Court has affirmed a conviction against a defendant on the charges of assault in the third degree and exhibiting a gun in a threatening manner. *State v. Brewer*, 630 S.W.2d 591 (Mo.App.1982). The present charges of assault first degree under Section 565.050.1(1) RSMo. and unlawful use of a weapon, Section 571.030.-1(4) RSMo., clearly are separate statutory offenses, each requiring distinct elements of proof not required by the other. The fact that these elements may have occurred as a continuous course of conduct in a

relatively short span of time does not prohibit the State of Missouri from charging two separate crimes. *State v. Olson*, 636 S.W.2d 318, 320 (Mo. en banc 1982).

Appellant complains of the search of his car and the seizure of the knife and gun from the floor without a search warrant. Police arriving at the scene found the bleeding victim, heard statements of witnesses concerning the struggle and were directed to the appellant's car in the parking lot where he was found lying on the front seat with the doors locked. It was necessary to break a car window and forcibly remove the appellant. An arresting officer then noticed a knife on the front floor. Instead of immediately seizing the knife, the arresting officer waited approximately twenty to thirty minutes for the arrival of a detective who was to process the scene. This detective was told of the knife on the car floor. In processing the car, the detective found a knife sheath and a gun which were also seized.

Appellant does not claim a lack of probable cause. No valid argument can be made that the arresting officer could not have searched for and seized the gun and knife from the interior of the car. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *State v. Jackson*, 646 S.W.2d 367 (Mo.App.1982). Appellant's complaint seems to center on the fact that a delay of twenty to thirty minutes occurred after the car was immobilized and secured and therefore exigent circumstances were lacking which would justify the warrantless search.

 The courts have ruled that a delay in processing a car after a defendant's arrest is permissible. In *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), a defendant was arrested for attempting to pass fraudulent checks at the drive-in window of a bank. The car was taken to a police station and a warrantless search conducted one hour later revealed incriminating evidence which was held to be admissible. A Missouri decision has also upheld the validity of a warrantless vehicle search conducted at a police garage one hour after a defendant's arrest. *State v. Olds*, 603 S.W.2d 501 (Mo. en banc 1980). It would be illogical to require an officer who is photographing, searching and processing a vehicle at the scene, twenty to thirty minutes after the crime was committed, to obtain a search warrant when the arresting officer could have validly searched the vehicle at the time defendant was taken into custody. The authority to conduct a valid warrantless search does not vanish once the car has been immobilized. *Michigan v. Thomas*, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982).

The conviction and sentence are affirmed.

DOWD, C.J., and SATZ, J., concur.