**STATE of Missouri, Respondent,**

v.

**Andrew W. HARPER, Appellant.**

**No. WD 46309.**

Missouri Court of Appeals,
Western District.

June 15, 1993.

Craig A. Johnston, Office of the State Public Defender, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Albur, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J. and HANNA and SPINDEN, JJ.

HANNA, Judge.

Appellant, Andrew Harper, was found guilty by a jury and sentenced by the court as a prior offender as follows: Count I, felonious restraint, seven years; Count II, forcible sodomy, seventy-five years; Count III, forcible sodomy, seventy-five years; Count IV, attempted forcible rape, seventy-five years; and Count V, sexual abuse first degree, five years. Counts II, III and IV were to run concurrently with each other but consecutive to Count I and Count V, for a total of eighty-seven years.

On June 5, 1990, K.J., the nineteen year old prosecutrix, was working as a waitress on Antioch Road in Gladstone, Missouri. She left work around 10:00 or 10:30 p.m. and went to Poppa Nick's Bar & Grill on Antioch Road to meet her friend who was working there. K.J. had taken off her waitress uniform and left it in her truck and was wearing long walking shorts and a long sleeved shirt. She and her friend left Poppa Nick's around 1:30 a.m. on June 6 and went to another restaurant for approximately one-half hour and then went to Perkins restaurant on North Oak Trafficway in Clay County, Missouri at about 2:00 a.m.

They stayed at Perkins for approximately one hour and then walked toward their vehicles in the parking lot. As they were standing in the parking lot, some men that they did not recognize, were yelling at them. K.J. walked past the men's car, noticing more than one person in the car, and then got into her truck. K.J. drove to her home in Clay County, Missouri. As she got out of her truck and gathered her work clothes, she heard a car pull up. Thinking it was her girlfriend, she walked toward the car. She realized that the figure walking toward her was not her girlfriend, so she asked who it was.

The man, Kenny Thornburg, grabbed her and put his hands over her mouth. She screamed, bit, kicked and threw away her keys because she thought she was being dragged to her car. Thornburg pulled her into his car with the other three men and the car took off fast around the corner. Thornburg locked the door, but K.J. reached over and unlocked it, so Thornburg locked it again and pushed her into the middle of the back seat between him and the defendant, Harper. They handcuffed her and at first asked for money.

Thornburg kept telling the driver to take 71 South. After driving for a while, they reached a four-lane highway. K.J. testified they were on a four-lane highway when she was asked to take off her clothes. She believed they were on I–35 but she did not have any memory as to when they crossed the Missouri River.

Thornburg performed various sexual acts on K.J. and was "egging" the defendant to do the same. They told the driver to take "71 South towards home, towards Arkansas." The defendant kissed her on the neck, sucked on her neck and his hands touched her "all over." The defendant alternated between putting his fingers in her vagina and placing his mouth on her vagina. Both Thornburg and the defendant pushed K.J. down into the seat. The defendant pulled his pants down and tried to rape her but was unsuccessful because he was unable to obtain an erection. Nevertheless, he tried to put his penis in her vagina.

K.J. told them she was pregnant (which was not true) and that they were hurting her and her baby and begged them to stop. They finally told her she could put her clothes back on. She put on her waitress shirt but took off her name tag and pushed it down into the seat because she was afraid she would be killed and hoped that someone would find the name tag and know what had happened to her.

Thornburg and the defendant told K.J. that they would not hurt her but that they were not sure what the men in the front seat might do to her. Thornburg told her that there was a gun in the front seat, which K.J. observed when she leaned forward.

K.J. said that at one point she was able to look around and noticed she was on a street that had real tall buildings, and that it was a city street. She looked to her left and saw a big "OK Furniture" sign on a building so she knew it was downtown Kansas City. They then drove for a long time and she saw a Bannister Road sign and her captors said they were taking her toward Arkansas.

They stopped once on 115th Street because K.J. had to go to the bathroom. The defendant also wanted to go to the bathroom. They handcuffed her again and the defendant got out and got a beer from the trunk. K.J. related that "over the next several hours, each of the four men raped [her] and sodomized [her] several times." She was able to get away later on that day after she was taken to a barn in Cass County. She escaped the barn, went to a farmhouse, and called her mother and then the police. As a result of the sexual abuse she received, among other things, a cut on her mouth, a bruise on the right side of her neck and other bruises.

She was interviewed by police officers, and Detective Randall Morris of the Kansas City Police Department saw her at St. Luke's Hospital on June 6. Detective Morris asked K.J. to come to police headquarters the following day to give a formal statement. She arrived at the police station at 4:20 p.m. on June 7 and immediately

identified the defendant from a photo array.

Detective Morris testified that the 71 South route, from the time it intersects I-35 at the river to the point where it reaches the corner of Prospect and Truman, is in Jackson County, Missouri. John Maybrier, owner of OK Furniture, testified that his store is located at the corner of Truman and Prospect and was at that location on June 6. He testified that above the door is an "OK Furniture" sign in red letters.

■ K.J. testified that on November 8, 1990, she witnessed the defendant in Johnson County Courthouse[1] plead guilty to raping her two times and to two counts of sodomy against her. She further testified that on March 1, 1991, she was present at the Clay County Circuit Court when the defendant plead guilty to kidnapping her with intent to terrorize.

The defendant did not present any evidence and at the close of all the evidence, the jury found the defendant guilty as charged. The judge sentenced the defendant under the prior offender statute. Appellant filed a timely notice of appeal.

Defendant first argues that the trial court erred when it allowed K.J. to testify that she was present and heard the defendant testify at his guilty plea hearings in the Johnson and Clay County courthouses in violation of Rule 24.02(d)(5).

Initially, we note that the defendant failed to preserve the error for appellate review. When this testimony was offered, the defendant objected that the evidence was prejudicial, irrelevant and that its prejudicial value outweighed its probative value. He made the same point in his motion for new trial. The defendant now argues an expanded and different legal theory on appeal; that the admission of this evidence violated Rule 24.02(d)(5). This, he is not entitled to do. *See State v. Gilley,* 785 S.W.2d 538, 539–540 (Mo. banc 1990); *State v. Hornbuckle,* 769 S.W.2d 89, 92 (Mo. banc 1989), *cert. denied,* 493 U.S. 860, 110 S.Ct.

171, 107 L.Ed.2d 128 (1989). Nevertheless, in the interest of justice, we will review *ex gratia,* under the plain error doctrine. Rule 29.12(b).

The relevancy of this evidence is explained in *State v. King,* 588 S.W.2d 147 (Mo.App.1979) where the court said:

[A] well recognized exception makes evidence of other crimes admissible when that evidence "tend(s) to establish ... a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other...." [citation omitted] Equally well recognized, in our state, is the parallel exception which permits proof of another crime, if the other crime is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other, [citations omitted]. Under this latter exception, the state is permitted to paint a complete and coherent picture of the crime charged and it is not required to sift and separate the evidence and exclude the testimony tending to prove the crime for which the defendant is not on trial. [citations omitted]

*Id.* at 150.

The events in this case commenced in Clay County and continued into Jackson and Cass counties. The evidence of the plea hearings was relevant on both counts. It was necessary to completely describe these events that were so closely linked together in time and circumstance and because proof of the crimes committed against her in Clay and Cass counties were so interrelated that they tended to establish the commission of the crimes in Jackson County. The evidence was relevant and probative.

■ On appeal, the defendant argues that the admission of the guilty pleas violated Rule 24.02(d)(5) which states:

[E]vidence of a plea of guilty, later withdrawn, or of an offer to plead guilty to the crime charged or of any other crime,

---

**1.** The crimes were committed in Cass County but transferred to Johnson County on a change of venue.

or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the pleas or offer.

The rule is not concerned with completed plea agreements where the plea has been accepted and an adjudication of guilt made either by a court finding or the imposition of a sentence. The record reveals that court and counsel proceeded on the basis that the pleas were completed, adjudication made, and sentence imposed. There is no evidence that the pleas were incomplete, defaulted, refused or withdrawn.

The Missouri rule is analogous to Federal Rule of Criminal Procedure 11(e)(6)(D), which is identical to Rule 410 of the Federal Rules of Evidence. The legislative history and committee notes indicate the rule applies only to incomplete plea agreements or offers to plea and is not applicable to completed pleas. The rule has as its purpose the promotion of a compromise disposition of criminal cases by encouraging complete candor and open, good faith negotiations. Fed.R.Crim.P. 11 advisory committee's note to the 1979 Amendment. In this manner, the plea process is protected.

The plea process is a necessary and integral part of the criminal justice system and the rule allows the parties to operate in an atmosphere that does not discourage plea arrangements. Clearly, Rule 24.02(d)(5) applies to defaulted, withdrawn, or incomplete pleas, which protects the integrity of the plea agreement procedure. *State v. Danneman*, 708 S.W.2d 741, 743 (Mo.App. 1986). A defendant's "admission" of guilt cannot be used against him in his subsequent trial when his plea attempt or offer were incomplete or not accepted by the court. For this reason Rule 24.02(d)(5) is not applicable to the facts of this case. The evidence was admissible and therefore, no error resulted.

The defendant next complains that the court erred by finding him a prior minimum term offender under § 558.019, RSMo.1986. He maintains the court's finding violated the prohibition against *ex post facto* laws of the United States Constitution Article I,

Section 10 and the Missouri Constitution, Article I, Section 13. He bases this argument on the fact that he had not served the 120 days incarceration, an element of § 558.019, before the date he committed the present crimes. Section 558.019.2 in relevant part states:

> Other provisions of the law to the contrary notwithstanding, any defendant who has pleaded guilty to or has been found guilty of a felony and served time of imprisonment of not less than one hundred twenty days in the department of corrections ... and has been committed to the department of corrections ... as a prior offender, persistent offender, or class X offender shall be required to serve the following minimum prison terms:
>
> (1) If the defendant is a prior offender, the minimum prison term which the defendant must serve shall be forty percent of his sentence ...

For the purpose of determining the minimum prison term to be served, § 558.019.4 defines a "prior offender" as one who has previously plead guilty to or has been found guilty of one felony.

The defendant admits that he is a prior offender under § 558.016, RSMo 1986, because he had plead guilty to a felony four months before the crimes at issue in this lawsuit. However, he objects to the trial court's finding that he was a prior minimum term offender pursuant to § 558.019, since he had not served the 120 days before he committed these crimes.

He had pled guilty to burglary second degree and stealing on February 2, 1990, in Nevada, Missouri. He was placed on probation, which was subsequently revoked and he was remanded to prison on April 3, 1991. He would have completed service of 120 days in prison around August 1, 1991. The crimes he committed here occurred June 6, 1990. Section 558.019 was effective January 1, 1987. He was found guilty by the jury of the crimes now before us on February 20, 1992, and found to be a prior minimum term offender on May 15, 1992. No case law has been cited to us nor have we found any that requires a defendant to

have served the 120 days incarceration before he commits the second felony.

■ The defendant urges a strict construction of the statute under the "rule of lenity" requiring that an "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980). There exists no ambiguity in the statute. It is straightforward and clear. To be adjudged a prior minimum term offender, the defendant must have plead to or been found guilty of a felony and have served 120 days incarceration. In this case, the defendant simply had not completed all of the requirements of the prior offender statute, the 120 days incarceration, at the time he committed these crimes.

■ In *State v. Williams*, 797 S.W.2d 734, 740 (Mo.App.1990), this court held that a defendant need not be confined for 120 days on each prior offense to be held to be a Class X offender. Williams was found to be a Class X offender because he had been found guilty of three prior felonies even though he had been incarcerated on only one of the convictions. *Id.*

However, the defendant had completed the requirements of the statute—served the 120 days confinement before he was found guilty and sentenced as a prior minimum term offender. When he plead guilty to the prior crime he knew it carried a punishment range of incarceration in excess of 120 days and at that time § **558.019** was in effect. In other words, the defendant had engaged in the proscribed conduct after the effective date of the statute. He had it within his control to cause the statute to be inapplicable to him.

The court in *State v. Acton*, 665 S.W.2d 618, 620 (Mo. banc 1984), held that the defendant was being punished for the conduct in the third offense, and so the subsequent enactment of a more severe statute did not work to the disadvantage of the defendant. The statute punishes a repeat offender "for his latest offense on the basis of his demonstrated propensity for misconduct." *Id.* at 619. For the defendant to claim the prohibition of an *ex post facto*

law, § 558.019 "must be retrospective, that is, it must apply to events occurring before its enactment." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). There is no question that § 558.-019 was enacted before the events that gave rise to the charges in this case. Therefore, there is no retrospective application of the law. The legislative aim in enacting § 558.019 was not to punish past activity, but to penalize subsequent conduct. Mr. Harper was disadvantaged by the law, as it applied to him, but he had no complaint that the law was *ex post facto* because the law was in effect when he committed the offenses for which he was tried. Point denied.

In the defendant's third point he claims that the trial court erred in failing to declare a mistrial, *sua sponte*, during the state's closing argument because the prosecutor's remarks were a direct reference to the defendant's failure to testify. The defendant did not testify. Because defendant failed to object at the time of the arguments, he requests plain error review pursuant to Rule 29.12(b).

In the closing argument, the prosecuting attorney argued that "there was no evidence to the contrary." "Again, that evidence is uncontradicted," (both referring to the victim's lack of consent and that there was forcible compulsion), "not contradicted," (the victim wasn't married to the defendant), and "uncontroverted," (venue). In arguing the court's instruction that the jury may consider not only the direct evidence but also the reasonable inferences, the prosecutor said, "The only direct evidence in this case has been submitted to you by the state and it is uncontradicted."

■ Relief should rarely be granted on assertion of plain error as to closing argument because "in the absence of an objection and a request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo. banc 1988), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Relief should rarely be granted on

assertion of plain error to matters contained in closing argument because trial strategy looms as an important consideration and such assertions are generally denied without explication. *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986).

■ Moreover, the defendant's argument that he was prejudiced by the comments that the evidence was "uncontradicted" or "uncontroverted" is without merit. Such characterizations of the evidence is not an impermissible reference to a criminal defendant's failure to testify. The prosecutor's remarks in this case were not a direct and certain reference to the defendant's failure to testify. Merely stating that the evidence is uncontradicted is not a forbidden reference to a defendant's failure to testify. *State v. Robinson,* 641 S.W.2d 423, 426 (Mo. banc 1982); *State v. Garmon,* 780 S.W.2d 721, 723 (Mo.App.1989). There is no error in the prosecutor's remarks in closing argument.

■■ The defendant next complains of the trial court's error in overruling his motion for judgment of acquittal because there was insufficient evidence to establish the venue of the crimes in Jackson County, Missouri.

The right to proper venue is guaranteed by the Missouri Constitution, Article I, Section 18(a). Venue must be proved but it is not an integral part of the offense and thus need not be proven beyond a reasonable doubt or by direct evidence. Instead, venue may be inferred from all of the evidence. *State v. Lingar,* 726 S.W.2d 728, 732 (Mo. banc 1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). The standard by which venue must be established is whether it could reasonably be inferred by the facts and circumstances that the charged crime occurred within the trial court's jurisdiction. *Id.*

■ The victim testified that while the defendant was sexually abusing her, sodomizing her and attempting to rape her that she knew she was in downtown Kansas City because of the tall buildings and the city lights. She testified that during the commission of these crimes, she saw

the building with "OK Furniture" painted on its side. An employee of OK Furniture testified that the only OK Furniture store in the Kansas City area was located at the corner of Truman Road and Prospect, which is in Jackson County. Additionally, the state introduced a map of Jackson County into evidence and K.J. was able to trace the route she believed the defendant and his co-conspirators had taken while the defendant committed these various acts against her. The jury could reasonably infer from the facts and circumstances that the crimes for which the defendant was on trial occurred in Jackson County. The point is denied.

The defendant next argues that his double jeopardy rights were violated when the trial court overruled his motion to dismiss the felonious restraint charge and he was found guilty of that crime. He had previously plead guilty to kidnapping in Clay County and argues that the same factual issues are present in both crimes.

■ When passing on double jeopardy issues, our courts have followed the separate or several offense rule rather than the same transaction rule. *State v. Carter,* 535 S.W.2d 537, 538 (Mo.App.1976); *State v. Williams,* 815 S.W.2d 43, 46 (Mo.App. 1991). This rule allows a defendant to be charged and convicted of several offenses which arise from the same transaction, incident or set of facts without violation of double jeopardy. *Carter,* 535 S.W.2d at 538.

■ In *State v. Whitehead,* 675 S.W.2d 939, 943 (Mo.App.1984), the court held that assault first degree under § 565.050.1(1) and unlawful use of a weapon under § 571.030.1(4) were separate statutory offenses because each required distinct elements of proof not required by the other. *Id.* The *Whitehead* court held that "where a defendant is charged with several crimes in the same series of events and each crime requires proof of a fact distinct from the others, then there is no double jeopardy even if there is some overlap in the proof necessary to establish the crimes." *Id.* Additionally, "[t]he fact that these elements may have occurred as a continuous course of conduct in a relatively short span of time does not prohibit the state of Mis-

souri from charging two separate crimes." *Id.* at 943–44.

The elements of kidnapping and felonious restraint are separate and distinct offenses that present different factual issues. The elements of kidnapping to which he pled guilty under § 565.110, RSMo 1986 are: (1) unlawfully removing another without her consent from the place where she is found or unlawfully confining another without her consent for a substantial period for the purpose of; (2) terrorizing the victim. A person commits the crime of felonious restraint under § 565.120, RSMo 1986 if: (1) he knowingly restrains another unlawfully, (2) without consent, (3) so as to interfere substantially with her liberty, and (4) exposes her to a substantial risk of serious physical injury.

This court held in *State v. Sipe,* 648 S.W.2d 177, 181 (Mo.App.1983), that the crime of felonious restraint is not a lesser included offense of kidnapping because it requires proof of an element, exposure to substantial risk of harm, which is not included in the kidnapping statute. Thus, the crime of felonious restraint requires an element of proof not required by the crime of kidnapping. Point denied.

For his final point, the defendant asks for plain error review because the court erred when it submitted Instruction No. 4, defining "reasonable doubt," arguing that the term "firmly convinced" suggests a higher degree of doubt than is constitutionally required for acquittal. We decline to review the claim as it was not preserved. Our refusal to review is particularly so in light of the repeated decisions of our Supreme Court that the instruction is not erroneous. *State v. Griffin,* 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Guinan,* 732 S.W.2d 174, 177–78 (Mo. banc 1987), *cert. denied,* 484 U.S. 933, 108 S.Ct. 308, 98 L.Ed.2d 266 (1987). Point waived.

The judgments of conviction are affirmed.

All concur.