Gary WICKHAM, Appellee,

v.

Denis DOWD, Appellant.

No. 89–2580.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1990.

Decided Sept. 24, 1990.

Rehearing and Rehearing En Banc
Denied Dec. 10, 1990.

Stephen D. Hawke, Jefferson City, Mo.,
for appellant.

Michael L. Short, Kansas City, Mo., for
appellee.

Before LAY, Chief Judge, and
MAGILL and BEAM, Circuit Judges.

MAGILL, Circuit Judge.

Denis Dowd, Superintendent of the
Ozark Correctional Center, appeals the dis-
trict court's grant of Gary Wickham's peti-
tion for writ of habeas corpus filed pursu-
ant to 28 U.S.C. § 2254(a). The district
court granted Wickham's petition on the
ground that the state court's imposition of
a special probation condition that he not
consume alcohol, revocation of his proba-
tion for the violation of that condition, and
subsequent imposition of a previously sus-
pended twenty-year sentence had the effect
of punishing him solely because he was an
alcoholic, in violation of the eighth amend-
ment, as applied to the states through the
fourteenth amendment. Dowd argues that
in granting Wickham's petition, the district
court announced a new rule and applied it
retroactively in violation of *Teague v.
Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103
L.Ed.2d 334 (1989) (plurality opinion). We
agree and reverse.[1]

I.

On March 4, 1983, Wickham pleaded
guilty to a Class D felony of leaving the
scene of a motor vehicle accident and a
Class B felony of burglary in the first
degree. The two offenses carried a maxi-
mum combined penalty of twenty-years im-
prisonment. At the guilty-plea proceeding,
Wickham acknowledged that he had been
drinking when the events leading to his
arrest occurred. The state court suspend-

---

**1.** Dowd also argues that, assuming the district
court did not violate the new rule principle,
there was no eighth amendment violation. Be-
cause we hold that the district court violated the
new rule principle, we are barred from reaching
the merits of the rule announced by the district
court. *Penry v. Lynaugh*, — U.S. ——, 109 S.Ct.
2934, 2952, 106 L.Ed.2d 256 (1989).

ed the imposition of sentence and placed him on supervised probation for five years subject to regular and special conditions including that he refrain from consuming or possessing any alcoholic beverages. The state court told Wickham that if he violated his probation, it would impose the maximum sentence of twenty years.

On August 25, 1983, Wickham was again arrested when police responded to his mother-in-law's telephone call that he had broken the windshield of her car.[2] A breathalyzer gauged his alcohol level at .22. He admitted at his probation-revocation hearing that he had consumed alcohol. The state court found that Wickham had violated three of his conditions of probation. Instead of carrying through with its threat of imposing the maximum sentence, however, the court offered Wickham two options. Under the first option, Wickham would be sentenced *immediately* to two consecutive five-year sentences in the penitentiary. Under the second option, Wickham would be sentenced to the maximum punishment of twenty-years[3] imprisonment for the two offenses. However, the court would suspend the sentence and place him on probation subject not only to the same conditions the court had already imposed but additional conditions, including that he take antibuse daily and refrain from driving a motorized vehicle at any time except on his job site. Wickham was then informed that if he chose the second alternative and subsequently took even one

drink or drove an automobile, his probation would be revoked and he would have to serve the twenty-year sentence. After consulting with his family, Wickham chose the second alternative.

On January 20, 1984, Wickham was again arrested. His alcohol level was .29. At his probation revocation hearing on April 24, 1984, the court found that Wickham had again violated the condition of his probation that he not consume alcoholic beverages. The court revoked his probation, and reinstated his suspended sentence of twenty years.

After being denied relief in state court,[4] Wickham filed a petition for writ of habeas corpus in federal district court. The district court granted his petition, vacated his consecutive state sentences, and ordered the state to resentence him to two consecutive five-year sentences (the original option # 1)[5] on the ground that the twenty-year sentence had the effect of punishing Wickham solely because of his status as an alcoholic.

## II.

### A.

Dowd argues that the district court announced a new rule and applied it retroactively in granting Wickham's petition for writ of habeas corpus. In order to determine whether the district court announced a new rule, we must first identify the rule

---

2. Wickham was ultimately arrested for driving while intoxicated.

3. The state court originally stated that the maximum penalty was twenty-two years. This statement was in error and the court subsequently corrected its mistake.

4. The Missouri Court of Appeals held in part that:

    Wickham's sentence was within the statutory limit for burglary and leaving the scene of an accident. § 558.011. Punishment within statutory limits is not cruel and unusual unless it is so disproportionate under the circumstances that it shocks the moral sense of all reasonable [persons]. *State v. Whitehead,* 675 S.W.2d 939, 943 (Mo.App.1984); *State v. Walker,* 618 S.W.2d 43, 44 (Mo.App.1981). Here the alcohol prohibition was necessarily

a condition of probation since Wickham's alcoholism caused his criminal behavior. Wickham was twice warned that a probation violation would result in his imprisonment. Nevertheless, Wickham did not successfully complete an alcohol treatment program, drank alcohol and operated a motor vehicle other than to and from work. Given these circumstances, the twenty-year sentence is not cruel and unusual punishment. *Sincup v. Blackwell,* 608 S.W.2d 389, 392 (Mo. banc 1980).

*Wickham v. State,* 733 S.W.2d 793, 795 (Mo.App. 1987).

5. Dowd attacks the district court's August 4, 1989 order to resentence Wickham to a specific sentence as intrusive and inconsistent with an earlier order. Because we reverse the district court's grant of Wickham's petition, we need not reach this issue.

upon which it relied. The district court held that "[i]t was cruel and unusual punishment to double [Wickham's] sentences for doing what he was powerless to control, and the choice the state court gave [him] had the effect of punishing him solely because he was an alcoholic." *Wickham v. Dowd*, No. 88–0233–CV–W–5–P, slip op. at 8 (W.D.Mo. May 9, 1989). The district court's opinion can reasonably be read to hold that: (1) imposing a probation condition upon a known alcoholic *that he cannot consume alcohol*, and (2) sentencing the alcoholic *for violating that probation condition* constitutes cruel and unusual punishment because they have the effect of punishing him solely because he is an alcoholic.[6]

The question therefore arises whether the district court announced a new rule. In *Teague*, a plurality of the Supreme Court held that new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced. *Teague*, 109 S.Ct. at 1069. The Court defined a new rule as one which breaks new ground or imposes a new obligation on the states or the federal government. *Id.* at 1070. In other words, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (emphasis in original); *see also Sawyer v. Smith*, — U.S. —, —–––––, 110 S.Ct. 2822, 2824–25, 111 L.Ed.2d 193 (1990); *Saffle v. Parks*, — U.S. —, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990); *Butler v. McKellar*, — U.S. —, 110 S.Ct. 1212, 1216, 108 L.Ed.2d 347 (1990); *Penry v. Lynaugh*, — U.S. —, 109 S.Ct. 2934, 2952, 106 L.Ed.2d 256 (1989).

Wickham argues that the district court's grant of his petition for writ of habeas corpus did not involve the creation of a new rule. Wickham attempts to rely on two well-settled rules. First, a state sentence constitutes cruel and unusual punishment if it is so disproportionate that it shocks the moral conscience of reasonable persons. *See Solem v. Helm*, 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983).[7] Second, a state law which imprisons a defendant merely because of his status as an addict inflicts cruel and unusual punishment, thereby shocking the moral conscience of reasonable persons. *See Robinson v. California*, 370 U.S. 660, 667, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962). Relying on these two rules, Wickham argues that at the time his conviction became final, the eighth amendment, as applied to the states through the fourteenth amendment, prohibited the state court from: (1) imposing upon a known alcoholic a condition of probation that he not consume alcohol, and (2) revoking the alcoholic defendant's probation and imposing a sentence for violating the condition that he not drink alcohol.

While the two well-settled rules identified by Wickham may lend general support

---

**6.** No matter how one construes the district court's opinion, the focus is not on the exact manner in which Wickham was punished. For example, the district court's holding is not based upon whether the punishment stemmed from the imposition of the probation condition, revocation of probation, or imposition of the twenty-year sentence instead of the alternative ten-year sentence offered by the state court. The focus is on *whether the punishment, in whatever form, had the effect of punishing Wickham because of his status as an alcoholic.* Therefore, that is our focus for the purpose of determining whether the district court announced a new rule. If the district court's rule that the eighth amendment is violated when a known alcoholic probationer is "punished" for consuming alcohol constitutes a new rule, it is irrelevant what form the punishment took.

Furthermore, we note that the district court did not find that Wickham was *directly* punished because of his status as an alcoholic. Instead, the district court found that the imposition of the probation condition, revocation of his probation, and imposition of the twenty-year sentence had the *effect* of punishing him for his status as an alcoholic.

**7.** The *Solem* Court identified three criteria for determining the proportionality of sentences: (1) a comparison of the gravity of the offense with the harshness of the penalty; (2) a comparison of the sentence with the sentences imposed on others convicted of the same or similar offense in the same jurisdiction; and (3) a comparison of the sentence with those imposed for the same or similar offense in other jurisdictions. *Solem*, 463 U.S. at 290–92, 103 S.Ct. at 3009–11.

to the conclusion reached by the district court, this fact does not suffice to show that the rule announced by the district court was not "new."[8] *See Sawyer,* —— U.S. at ——, 110 S.Ct. at 2824. The district court extended the reasoning of the well-settled principles cited by Wickham, thereby presenting us with a difficult case. The Supreme Court noted in *Saffle* that while the "explicit overruling of an earlier holding no doubt creates a new rule; it is more difficult ... to determine whether we announce a new rule when a decision extends the reasoning of our prior cases." *Saffle,* 110 S.Ct. at 1260. As a guide to making that difficult decision, we must refer to the underlying purpose of the writ, deterrence of state court constitutional violations. *Id.* Therefore, "reasonable, good-faith interpretations of existing precedents made by state courts" must not be upset "even though they are shown to be contrary to later decisions." *Butler,* 110 S.Ct. at 1217; *see also Saffle,* 110 S.Ct. at 1260.

In arguing that the district court did not announce a new rule, Wickham claims that the state court was bound by controlling authority at the time his conviction became final in 1983. He directs our attention to *Robinson,* in which the Supreme Court held that "a state law which imprisons a[n addict] as a criminal, *even though he has never touched any narcotic drug within the State* or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the [Constitution]." *Robinson,* 370 U.S. at 667, 82 S.Ct. at 1421. (emphasis added). The holding in *Robinson* dictates that a state may not punish a defendant merely because of his status as an addict. This rule does not dictate that the eighth amendment is violat-

ed whenever an addict is punished for using a drug to which he is addicted. In fact, the Court explicitly left that question open, noting that "[t]his statute ... is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration.... [W]e deal with a statute which makes the 'status' of narcotics addiction a criminal offense." *Id.* at 666, 82 S.Ct. at 1420. The rule announced by the district court was not dictated by *Robinson* or any other controlling precedent existing at the time Wickham's conviction became final.[9] Therefore, even if the district court's decision to extend the well-settled rule that the eighth amendment prohibits punishing a defendant merely because of his status as a drug addict to the present case was correct, it is nonetheless inescapable that the state court's interpretation of the existing law in 1983 was reasonable given the language of *Robinson.*

An examination of *Saffle* is also instructive. At the time the defendant's conviction in *Saffle* had become final, it was settled that the state could not bar relevant mitigating evidence from being presented and considered during the penalty phase of a capital trial. *Saffle,* 110 S.Ct. at 1261 (citing *Lockett v. Ohio,* 438 U.S. 586, 605, 606, 98 S.Ct. 2954, 2965, 2966, 57 L.Ed.2d 973 (1978) (cited portion, plurality opinion), *Eddings v. Oklahoma,* 455 U.S. 104, 113–15, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982)). The defendant sought to apply a rule that jurors must be allowed to base sentencing decisions upon the sympathy they feel after hearing the mitigating evidence. *Saffle,* 110 S.Ct. at 1261. Although the rule the defendant sought to apply was

**8.** In fact, to the extent Wickham relies only on the general eighth amendment standard that a sentence violates the Constitution if it is so disproportionate that it shocks the moral conscience of reasonable persons, we conclude that he has not identified any binding precedent which would convince us that the district court's rule was not a new rule. As applied at this level of generality, the new rule test would be rendered meaningless because petitioners could always identify some abstract, albeit well-settled, rule and argue that their claim is based only on

an application of that rule to the facts of their case. *Sawyer,* —— U.S. at ——, 110 S.Ct. at 2824.

**9.** Accepting, *arguendo,* the district court's interpretation of *Sweeney v. United States,* 353 F.2d 10 (7th Cir.1965), and *State v. Oyler,* 92 Idaho 43, 436 P.2d 709 (1968), we note that neither case compelled the state court to adopt the rule subsequently announced by the district court because the holdings of the Seventh Circuit and Idaho Supreme Court are not binding in Missouri.

closely related to the well-established rule, the *Saffle* Court held that it was a new rule. The settled precedent dictated *"what"* jurors may consider; the rule urged by the defendant dictated *"how"* jurors may consider the evidence. *Id.* (emphasis in original).

This case is analogous to *Saffle.* The rule adopted by the district court states that a known alcoholic cannot be effectively punished for violating a special probation condition that he must refrain from consuming alcohol, no matter how reasonable the condition might otherwise be. The settled precedent of the Supreme Court, which Wickham urges controls this case, dictates that a defendant cannot be punished for his status as an addict. The district court's rule dictates what *act* a court may not consider in setting probation conditions and revoking probation (i.e., drinking by alcoholics). The settled rule dictates only what *status* a court may not consider (i.e., alcoholism). Although related, the settled precedent does not dictate the result urged by the defendant. Reasonable minds could differ over whether the reasoning of *Robinson* requires the rule adopted by the district court. Therefore, we refuse to invalidate the state court's reasonable, good faith interpretation of existing precedent. *See Butler,* 110 S.Ct. at 1217.[10] We hold that the district court announced a new rule.

### B.

Having decided that the district court announced the creation of a new rule, we must determine whether that rule falls within one of two narrow exceptions "to the general principle that new rules will not be applied on collateral review." *Saffle,* 110 S.Ct. at 1263. First, a new rule will be retroactively applied for the benefit of a petitioner if it places " 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe,' " *Teague,* 109 S.Ct. at 1073 (quoting *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring)), or if it prohibits the imposition of a certain type of punishment for a class of defendants because of their status or the nature of their offense. *Sawyer,* —— U.S. at ——, 110 S.Ct. at 2826. Second, a new rule will be retroactively applied if it announces a "new 'watershed rule[ ] of criminal procedure' ... necessary to the fundamental fairness of the criminal proceeding." *Id.* (quoting *Saffle,* 110 S.Ct. at 1263; *Teague,* 109 S.Ct. at 1075).

The new rule announced by the district court does not protect primary, private individual conduct. The consumption of alcohol by an alcoholic convicted felon on probation certainly is not the type of primary, private conduct to which the Supreme Court referred.

Furthermore, the new rule does not prohibit the imposition of a certain category of punishment because of a probationer's status as an alcoholic. The rule merely prohibits the revocation of probation and the imposition of a suspended sentence on the basis of an alcoholic probationer's decision to consume alcohol in violation of his probation condition. *See Penry,* 109 S.Ct. at 2953 (if the "Eighth Amendment prohibits the execution of mentally retarded persons ... regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review").

The new rule also does not prohibit the imposition of a certain category of punish-

---

**10.** We also note that neither the district court nor Wickham identified any precedent which, at the time Wickham's conviction became final, dictated the rule subsequently announced by the district court. In fact, in formulating its opinion, the district court did not cite even one controlling case to directly support its rule. As the Supreme Court noted in *Sawyer,* it is "beyond question that no case prior to *Caldwell* [*v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985),] invalidated a prosecutorial argument as impermissible under the Eighth Amendment." *Sawyer,* —— U.S. at ——, 110 S.Ct. at 2824. Based in part on this observation, the Court concluded that the rule advanced by the defendant was not dictated by prior precedent. We draw the same conclusion from the lack of any controlling authority compelling the district court's rule.

ment because of the nature of the offense. The new rule prohibits courts from: (1) imposing upon a known alcoholic a probation condition that he not consume alcohol, and (2) revoking the probation *because of a probationer's violation of that condition,* not because of the nature of the probationer's offense (i.e., first-degree burglary and leaving the scene of an accident). *See id.* at 2952 (citing *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (death penalty cannot be imposed for rape), to illustrate instance where a new rule prohibits imposing a certain category of punishment on a class of persons because of the nature of their offense). Therefore, no aspect of the first exception applies.

The second exception does not apply either. The new rule announced by the district court is not necessary to the fundamental fairness of the criminal proceeding. The rule does not involve the determination of a defendant's guilt or innocence. In fact, its application is not relevant until after a defendant's conviction has been obtained. Because violation of the district court's new rule "would not seriously diminish the likelihood of obtaining an accurate determination," we conclude that the district court "did not establish any principle that would come within the second exception." *Butler,* 110 S.Ct. at 1218.

### III.

Accordingly, we reverse the judgment of the district court granting Wickham's petition for writ of habeas corpus.

LAY, Chief Judge, dissenting.

I respectfully dissent.

The majority opinion misses the mark.

The majority circumvents a decision on the merits of this case by deciding under non-retroactivity principles of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), that the petitioner may not raise a disproportionate sentence claim in a federal habeas proceeding. The

Eighth Amendment prohibition of disproportionate sentencing is not a "new rule" under *Teague.* The rule prohibiting disproportionate sentencing, established in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), predates Wickham's conviction.

Petitioner asserts that his state sentence of twenty years, ostensibly for burglary and leaving the scene of the accident, was actually doubled by the state judge because he violated a probation condition requiring that he abstain from alcohol. Petitioner urges the increased punishment was not for the underlying offense, and consequently his total punishment is disproportionate to his crime.

The majority's analysis of the district court holding is erroneous. The district court specifically addressed the proportionality of the sentence and found the twenty-year sentence "totally unreasonable." [1] Rather than confront this difficult question directly, the majority instead asserts that Wickham seeks to establish a new rule and that *Teague* bars review of the claim. The majority's overbroad definition of a "new rule" under *Teague* forecloses all collateral review unless petitioner is fortuitous enough to allege facts identical to an already-decided claim.

Alexander Hamilton once noted that Blackstone had described the Habeas Corpus Act as the "Bulwark of the British Constitution." The Federalist No. 84, at 629 (A. Hamilton 1892) (citing 4 W. Blackstone, *Commentaries* *488). If the majority is correct in its application of *Teague,* the writ of habeas corpus has become the toothless writ of the American Constitution.

In *Teague,* a plurality of the Supreme Court adopted Justice Harlan's view that new rules of criminal procedure should not be applied retroactively on collateral review. The Court adopted this view with the purpose of ensuring finality in state criminal cases, believing that the resulting

---

**1.** The court stated: "[T]he issue in the present matter is whether the 5-year and 15-year maximum sentences imposed by the state court were so grossly disproportionate to the offenses com-

mitted that they violate the Eighth Amendment under the circumstances of this case." *Wickham v. Dowd,* No. 88-0233-CV-W-5-P, slip op. at 5 (W.D.Mo. May 9, 1989).

scope of habeas review would still serve to deter courts from violating established rules of criminal procedure. A "new rule" of criminal procedure is defined as one that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 109 S.Ct. at 1070. A new rule exists if "the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (emphasis in original).

The district court granted a writ of habeas corpus to petitioner under the principles of *Solem.* Thus, the court's holding did not involve a new rule. A succinct summary of Eighth Amendment law illustrates the flaws in the majority's analysis.

The evolution of Eighth Amendment doctrine concerning proportionate sentencing begins with *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910).[2] The Court held that confining a person to fifteen years of hard labor in chains was cruel and inhumane treatment for the crime of simple fraud, and noted that "it is a precept of justice that punishment ... should be graduated and proportioned to offense." *Id.* at 367, 30 S.Ct. at 549. Courts and commentators subsequently debated whether *Weems* established a rule on disproportionate sentencing or was directed to the nature of the punishment inflicted. *See* Comment, *Solem v. Helm: Extension of Eighth Amendment Proportionality Review to Noncapital Punishment,* 69 Iowa L.Rev. 775, 776 n. 8 (1984).

The next development in Eighth Amendment proportionality doctrine was *Robin-*

son *v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), which held that a state could not punish a person solely because of the person's status. *Id.* at 667, 82 S.Ct. at 1420. The *Robinson* Court held that punishing a person for narcotics addiction absent any conduct in accord with that status was cruel and inhumane treatment. *Id.* The Court emphasized that even one day in jail for a person who is not engaged in criminal conduct may be unconstitutional. *Id.; see also Powell v. Texas,* 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).

Thereafter, in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Court upheld a life sentence, with parole, imposed on a repeat offender of non-violent crimes, and cast doubt on whether proportionality analysis would apply to noncapital crimes.[3] .In *Solem,* however, the Court removed that doubt and ruled that a criminal sentence can be so grossly disproportionate, even in noncapital cases, that it violates the Eighth Amendment. 463 U.S. at 288–89, 103 S.Ct. at 3008–09. The Court indicated it would apply the doctrine only in narrow circumstances, but in *Solem* found that a life sentence without parole for an alcoholic convicted of check fraud was unconstitutionally disproportionate. *Id.* at 303, 103 S.Ct. at 3016.[4]

Since *Solem,* various courts of appeal have reviewed a habeas petitioner's sentence as it relates to the offense committed, to determine whether the sentence was grossly disproportionate under the stan-

**2.** The court was confronted with a proportionality claim in *O'Neil v. Vermont,* 144 U.S. 323, 12 S.Ct. 693, 36 L.Ed. 450 (1892), but dismissed the case on procedural grounds. *See id.* at 339–40, 12 S.Ct. at 699–700 (Field, J., dissenting).

**3.** The Court stated that "one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel,* 445 U.S. at 274, 100 S.Ct. at 1139, *see* Comment, *supra,* at 775, 781 & n. 44.

**4.** It is an interesting contrast to the present case that our court, in holding that Helm received a disproportionate sentence, observed:

> Helm, who was 36 years old when he was sentenced, is not a professional criminal. The record indicates an addiction to alcohol, and a consequent difficulty in holding a job. His record involves no instance of violence of any kind. Incarcerating him for life without possibility of parole is unlikely to advance the goals of our criminal justice system in any substantial way. Neither Helm nor the State will have an incentive to pursue clearly needed treatment for his alcohol problem, or any other program of rehabilitation.

*Solem,* 463 U.S. at 297 n. 22, 103 S.Ct. at 3013 n. 22.

dard set out in *Solem.*[5] *See, e.g., United States v. Terrovona,* 785 F.2d 767, 771 (9th Cir.), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 553 (1986); *United States v. Ortiz,* 742 F.2d 712, 714 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984); *Whitmore v. Maggio,* 742 F.2d 230, 233 (5th Cir.1984). This court has applied *Solem* in many cases. *See, e.g., United States v. Buckner,* 894 F.2d 975, 980 (8th Cir.1990); *United States v. Milburn,* 836 F.2d 419, 420 (8th Cir.), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988); *Tyler v. Gunter,* 819 F.2d 869, 871 (8th Cir.1987). I fail to see how a rule uniformly and universally applied for seven years can be a new rule.

The majority dismisses the proportionality argument in a short footnote, *ante* n. 8, holding there is no binding precedent. The majority's reliance on *Sawyer v. Smith,* —— U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), is totally misplaced. The *Sawyer* Court held that a court may not circumvent the principles of *Teague* by claiming a violation of general, abstract principles of law. *Id.* 110 S.Ct. at 2832–33. The Court observed that "the [new rule] test would be meaningless if applied at this level of generality." *Id.* at 2828. Wickham, however, is not basing his claim on "general principles" of law; he asks for nothing more than the same proportionality analysis we routinely make under *Solem.*

The Court's decision in *Penry v. Lynaugh,* —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), directly refutes the majority's analysis. Penry, convicted of capital murder by a state court, objected to the trial court's refusal to instruct the jury that it could consider and give effect to mitigating evidence in determining sentence. Penry relied on two Supreme Court decisions, *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), both decided

before his conviction became final, which held that courts cannot prevent consideration of mitigating circumstances. The Court found these precedents, requiring courts *not to prevent* consideration of mitigating circumstances, dictated a rule that courts *must provide,* on request, an affirmative instruction that the jury may consider mitigating evidence.

The teaching of *Penry* seems to be that, to constitute a new rule, a rule must extend further than to simply recast an existing principle in light of new facts. The existing bedrock principle in *Penry* was that juries must be aware that they can consider mitigating evidence in a capital case. The Court in *Penry* did not change that rule, but merely applied it in a different situation.

The majority holds that the district court seeks to extend *Robinson.* Thus, it finds *Teague* applicable and holds that such an extension would create a new rule. This analysis totally misreads the district court's holding. The district court did not find the *Robinson* opinion controlling. The court initially cited *Robinson* in a single statement, restating petitioner's argument; but that was not the district court's holding. *Robinson* is easily distinguishable on both its facts and law. Fundamentally, *Robinson* is not a proportionality case. It simply holds that a person cannot be punished for "status."

The majority notes that *Robinson* does not prohibit punishment for the conduct of an alcoholic, but this observation is irrelevant. The district court addresses the evil of disproportionality under the eighth amendment: *"doubling* petitioner's sentence for doing what he was powerless to control." This invites a *Solem* analysis, not *Robinson.* Wickham urges that *Robinson* supports his argument because the district court attempted to punish his status (as an alcoholic) rather than the under-

---

5. The *Solem* Court established a three-part test for determining whether a sentence is proportionate:

> In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem,* 463 U.S. at 290–92, 103 S.Ct. at 3009–10.

lying offense. This argument is merely supportive of Wickham's disproportionality claim. Wickham clearly presents his claim as disputing a sentence totally disproportionate to his underlying offense.[6]

The record discloses that the trial court on numerous occasions stated it was punishing Wickham, not for the underlying crime, but for being an alcoholic. In the initial sentencing hearing, when the judge suspended Wickham's sentence and established the probation conditions, the court commented:

> COURT: Now, you have a drinking problem. There is no need trying to hide it. We all know it. If you don't you're the only one that doesn't know it. And the Court is also aware and your attorney is, and society is, that it's a very hard problem to control. You're addicted to it just like people are addicted to drugs or anything else. But the problem is, it's now becoming a very expensive addiction to you, and you can whip it if you want to. If you don't want to, nobody, I don't care how many programs you go to and what you do, nobody's going to get it whipped for you but yourself. And motivating

you by fear probably won't do it. You'[ve] just got to set your mind to it that you cannot handle alcohol, because if you do, you know you're going to get in a fight. You know you're going to raise hell somewhere. You know you're going to get in trouble and you know you're going somewhere, isn't that right Mr. Wickham?

WICKHAM: Yes it is.

COURT: Is there any doubt in your mind what will happen to you if you violate this probation?

WICKHAM: No.

COURT: We're talking about at the maximum twenty years, so I know it's a tough row to hoe, but Mr. Wickham you don't have any choices. You've come to the end of your rope here. Now if you're not willing to prove to yourself and set your mind yourself that you cannot live and drink alcohol, then you violate this and you are telling me "Well, I just can't do it." So I will accommodate you Mr. Wickham. *I will take you out of society for as long as I can, because we can't have you in society. You've*

---

6. The second page of Wickham's brief succinctly asserts this *Solem* argument:

> The final clause of the Eighth Amendment prohibits sentences that are disproportionate to the crime committed. *See Solem v. Helms,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). As noted by the Missouri Court of Appeals, Southern District, in *Wickham v. State,* 733 S.W.2d 793 (Mo.Ct.App.1987), "[p]unishment within statutory limits is not cruel and unusual unless it is so disproportionate under the circumstances that it shocks the moral sense of all reasonable men." [*citing State v. Whitehead,* 675 S.W.2d 939, 943 (Mo.Ct.App.1984) and *State v. Walker,* 618 S.W.2d 43, 44 (Mo.Ct.App.1981) ]. Petitioner herein was sentenced to the maximum sentences permitted for the underlying offenses. *See* § 569.160 R.S.Mo. (1978); § 577.060 R.S.Mo. (1978) and § 558.011 R.S.Mo. (1979). Even though sentencing within statutory limitations may not, in the abstract, be unconstitutional, the question cannot be considered in the abstract since cases recognize that a sentence of even a single day in prison may be unconstitutional in some circumstances. *See Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). As noted by the Supreme Court in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the

Eighth Amendment prohibits penalties that transgress today's "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." [*quoting Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285 [290] 50 L.Ed.2d 251 (1976) and *Jackson v. Bishop,* 404 F.2d 571, 579 (8th Circuit 1968) ]. The prohibition against cruel and unusual punishment also recognizes the "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590 [598] 2 L.Ed.2d 630 (1958) (plurality opinion). Thus, contrary to the assertion made in respondent's brief, the sentencing of petitioner within statutory guidelines does not, standing alone, allow said sentencing to pass constitutional muster under Eighth Amendment analysis. Rather, the District court properly examined all the circumstances surrounding petitioner's sentence to determine whether the sentences "imposed by the State Court were so grossly disproportionate to the offenses committed that they violate the Eighth Amendment *under the circumstances of this case.*" (Addendum to respondent's brief, hereinafter Add., at A-8) (emphasis added). The District Court properly applied Eighth Amendment analysis concluding that the sentences imposed on petitioner were unreasonable.
> Brief of Appellee at 2-3, *Wickham v. Dowd,* No. 89-2580WM.

*shown that you cause all kinds of hell to be raised when you drink, and you're going to kill somebody. It's a miracle you haven't yet. And so if you can't conform to the rules of this community and of the State of Missouri, you're telling me you don't need to be a member of this society and I'm going to put you away Mr. Wickham.* Now do you understand that?

WICKHAM: Yes I do.

COURT: We're not going to play any more games. I'm not going to take any excuse or explanation from you. *You either do it or sign you life away to twenty years in the pen because we don't need you out here if you're going to drink.* Now everybody tells me, not everybody but people who are acquainted with you, the Sheriff, law enforcement, that you're a good worker when you work and you only cause trouble when you get to drinking. And it's a problem that nobody can work with but you yourself. And nobody says it's easy. But you've got more at stake than the average person now because you know if you bust this probation again, you might as well pack your bag, *because you're not going to be in this society as long as I can keep you out of it.* Do you understand that?

[T. 39–42] (emphasis added).

After Wickham violated his probation, upon sentencing Wickham to twenty years, the court stated:

> You're another shining example of why the people of the RID organizations are crusading. They want people like

you out of society and that's where you have to go, Mr. Wickham. As far as I'm concerned, you are to be kept there for the rest of your natural life because you cannot function, you are a danger to your fellow human beings out on the streets of the state of Missouri.

[T. 235].

The judge never mentioned the offenses for which Wickham had been convicted.[7]

The majority adopts the simplistic view that the court, as a condition of probation, required Wickham to abstain from alcohol because drinking is related to Wickham's criminal conduct. This was the view of the Missouri Court of Appeals in denying Wickham's direct appeal. *Wickham v. State,* 733 S.W.2d 793, 794–95 (Mo.Ct.App.1987).

With all due respect, this is a superficial analysis. The state court made clear that a fair and reasonable sentence, at least in the eyes of the court, was two five-year consecutive sentences. If this sentence had been suspended and the defendant placed on probation with the condition that the defendant abstain from alcohol, there would be no issue for appeal. But that is not what occurred. As the district court observed, the state court gave Wickham the choice of serving ten years or having a suspended twenty-year sentence subject to the condition that Wickham not take a drink.[8] *The double punishment was not related to the underlying offense.* The increased punishment was directed at petitioner's status as an alcoholic and the need to remove his kind from society "for the rest of [his] natural life." Thus, the case merits judicial analysis as to whether the sentence

---

**7.** It is interesting to note that the underlying offenses here, burglary and leaving the scene of the accident, all involve a family feud. Wickham broke into his father-in-law's trailer and assaulted his brother-in-law. Twenty years in prison for offenses arising out of a family dispute is certainly relevant in determining proportionality under *Solem.*

**8.** As the district court stated, in view of petitioner's alcoholism "this was not a choice at all." *Wickham v. Dowd,* No. 88–0233–CV–W–5–P, slip op. at 8 (W.D.Mo. May 9, 1989).

Because the record fairly demonstrates that Wickham's increased punishment was for drinking in violation of his probation, *that* sentence

must be proportional to other penalties for unlawful drinking. Missouri's most severe alcohol-related penalty is for driving while intoxicated. "Persistent offenders," who have two or more intoxication related convictions in the preceding ten years, Mo.Ann.Stat. § 577.023 subd. 1(2) (Vernon Supp.1990), may receive a sentence not to exceed 5 years, Mo.Ann.Stat. § 558.011, subd. 1(4). Thus, even if the judge was sentencing Wickham for driving while intoxicated, the sentence is excessive in view of the sentencing range the state has authorized for repeat DWI offenders. Wickham received at least twice the harshest possible sentence under Missouri law.

was grossly disproportionate to the offense.

It is unnecessary at this point to make a full analysis of the gross disproportionality claim. The majority has seen fit to avoid discussion of the merits of the case. On the merits, reinforced by the district court's grant of a writ, Wickham makes out a strong case of disproportionality. In so stating I emphasize this is a close question and a difficult one. Full analysis might lead me to a contrary conclusion, but I do not think so.