**Hillum Safat Qital ABDULLAH, also known as Tommie Lee West, Appellee,**

v.

**Michael GROOSE, Appellant.**

No. 94–1783.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1994.

Decided Jan. 11, 1995.

Rehearing En Banc Granted; Opinion and Judgment Vacated March 24, 1995.

John W. Simon, Asst. Atty. Gen., Jefferson City, MO (argued) for appellant.

R. Gregory Bailey, St. Louis, MO (argued), for appellee.

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Michael Groose, Superintendent of the State of Missouri's Jefferson City Correctional Center, appeals from the district court's[1] order granting Hillum Safat Qital Abdullah a writ of habeas corpus ordering Abdullah be released unless the State takes steps within ninety days of disposition of this appeal to provide Abdullah a new trial. Abdullah is currently serving a five year sentence for his conviction of unlawful use of a weapon. Mo.Rev.Stat. § 571.030.1(1) (1986). At his state court trial, Abdullah elected to represent himself. Because of an earlier escape attempt the trial court ordered that Abdullah be shackled at trial. He filed his habeas petition claiming that his Sixth Amendment rights were violated because the state trial court had forced him to wear leg irons while representing himself. On appeal, Superintendent Groose argues that the district court's holding constituted a new rule which should not be applied retroactively; that Abdullah's claim was barred by the pro-

cedural default rule; and that the state trial court's error was harmless. We affirm the judgment of the district court.

Abdullah was indicted and tried under the name Tommie L. West in the Circuit Court for the City of St. Louis for unlawful use of a weapon. He now goes by the name of Hillum Safat Qital Abdullah.[2] He was originally represented by a public defender, but before trial he moved the court to permit him to represent himself at trial. Upon inquiry by the trial court, Abdullah stated that he was thirty-one years old, had a ninth grade education and had attended Watterson College, that he was not under the influence of drugs or alcohol, and that he did not suffer from any mental disease. The trial court informed Abdullah that he would be "held to the same rules that any other attorney is in [the] Court." The prosecutor stated on the record that Abdullah had some familiarity with courtroom procedure, having been convicted several times of carrying concealed weapons. After this colloquy, the court allowed Abdullah to proceed pro se. Later in the same hearing, the prosecutor moved to have Abdullah tried in shackles:

> Prosecutor: I think we need some ground rules for his conduct and movement during the course of the trial. As the Court's well aware, we attended a sentencing hearing with Mr. West last year, and he did in fact try to escape from the courtroom, and that's why he's wearing leg irons.
>
> And I consider him to be a very dangerous security risk. He's already got a ten-year sentence, and I'm a little concerned about him wandering around the courtroom giving a closing argument, making a voir dire, approaching a witness to cross-examine the witness considering his propensity for escape. Are you going to keep his legs bound during the course of the trial, or are you going to let him move freely?
>
> The Court: Well, based upon the information that this Court has received, he will have to proceed with this trial with the leg irons as they now are.

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

2. At various points in the proceedings he also called himself Abdullah Sharrieff Muhammed.

Neither Abdullah nor his erstwhile counsel objected to the shackling ruling. Immediately afterward, the court released Abdullah's counsel from further responsibility. Abdullah was convicted.

In his direct appeal in the state court Abdullah asserted that he had been denied a fair trial because he was shackled during the trial. Since Abdullah had not objected to the shackles at trial, the Missouri Court of Appeals reviewed the claim under Mo.R.Crim.P. 29.12(b) for plain error resulting in manifest injustice. Finding no such error, the court affirmed. *State v. West,* 743 S.W.2d 592, 594 (Mo.Ct.App.1988).

Abdullah then petitioned for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (1988). The district court referred the case to a United States Magistrate Judge,[3] who recommended that Abdullah's claim should not be procedurally barred. The Magistrate Judge recommended granting relief, reasoning that the trial court had not warned Abdullah of the "scope and dangers of self-representation in light of the decision to order him to wear leg irons while he presented his case to the jury.... The combination of shackles and self-representation is particularly prejudicial, and without specific warnings once the decision to shackle petitioner was made, it cannot be said that petitioner made the choice of self-representation knowingly and intelligently." The district court agreed that there was no procedural bar and permitted briefing on the merits. After additional briefing, the Magistrate Judge recommended that her proposed decision did not constitute a new rule and therefore should not be barred as retroactive under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The district court granted the writ in accordance with the Magistrate Judge's recommendations.

## I.

█ On appeal Groose argues that the district court's holding requires a second warning, and thus amounts to a new rule that cannot be applied retroactively under *Teague v. Lane.* Under *Teague,* a federal habeas court may not apply a new rule to invalidate a state conviction unless the rule falls within one of two narrow exceptions to the nonretroactivity principle. 489 U.S. at 311, 109 S.Ct. at 1075–76. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. at 1070; *Caspari v. Bohlen,* —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994). Abdullah's conviction became final in 1988.

The finding of a Sixth Amendment violation in this case rests on the authority of *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the line of cases on which it is based. *See Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Von Moltke v. Gillies,* 332 U.S. 708, 722, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948) (plurality opinion of Black, J.). These, of course, antedate Abdullah's conviction. *Faretta* held that a defendant who wishes to represent himself has a right to do so, but that the defendant "should be made aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'" 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)). Fifty years before Abdullah's case, the Supreme Court placed on the trial court the duty of ascertaining whether a defendant has made an intelligent and competent waiver of counsel. *Johnson,* 304 U.S. at 464–65, 58 S.Ct. at 1023. At the time of Abdullah's conviction, *Faretta* had been interpreted to require the court to "ensure that the waiver is not the result of coercion or mistreatment of the defendant, and ... that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving." *McQueen v. Blackburn,* 755 F.2d 1174, 1177 (5th Cir.), *cert. denied,* 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985) (internal citations omitted).

---

**3.** The Honorable Catherine D. Perry, then United States Magistrate Judge for the Eastern District of Missouri and now United States District Judge for the same district.

■ It was also well established at the time of Abdullah's conviction that forcing a defendant to undergo trial in chains is "inherently prejudicial," *Holbrook v. Flynn,* 475 U.S. 560, 568–69, 106 S.Ct. 1340, 1345–46, 89 L.Ed.2d 525 (1986); *see Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970), and should only be tolerated in cases of dire necessity. *Id.* "[S]hackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large," *Holbrook,* 475 U.S. at 569, 106 S.Ct. at 1346, and therefore pose a threat to the presumption of innocence and the integrity of the fact-finding process. *See id.* at 567–68, 106 S.Ct. at 1345. These problems are aggravated when a defendant is representing himself because the defendant has the Hobson's choice of trying to move about as necessary in the course of his self-representation, thus drawing the jury's attention to the shackles, or conducting his defense while seated behind the counsel table.

■ Considering first the court's duty to ascertain whether the defendant appreciates the significance of waiving counsel, and second, the long-recognized gravity of forcing a defendant to trial in chains, we conclude that the trial court did not live up to its obligation in this case. Abdullah did not know he would be tried in chains at the time he moved to waive counsel. Once the court decided to shackle him, the court made no effort to ascertain whether Abdullah understood the effect shackling would have on his ability to represent himself.

■ Superintendent Groose argues that there are no pre–1988 cases saying that the court must discuss shackling in its waiver colloquy. However, it has long been established that "[t]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case." *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023. Every case will have its specific facts, but it is the courts' task to apply the established general rule of *Faretta* to the infinite array of facts that present themselves. The essence of the district court's holding was to require that the general rule of *Faretta* be applied to the particular facts in this case, including the difficulties that shackling would pose to self-representation. The state trial court did not fulfill its duty to assure that Abdullah was "aware of the dangers and disadvantages of self-representation," *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, when it failed to discuss the crucial fact that Abdullah would appear before the jury in chains, and the particular restrictions and effect on the trial that that fact would have. The shackling was a specific circumstance creating difficulties of self-representation, so as to make particularly appropriate *Faretta* warnings. We deal only with the case before us, and as we do so, we conclude that *Faretta* requires that the defendant seeking to represent himself should be informed by the trial judge of the particular complexities and difficulties that the shackling causes. Therefore, Abdullah's Sixth Amendment rights under *Faretta* were violated, and the non-retroactivity principle of *Teague v. Lane* is irrelevant to this case.

Superintendent Groose argues that the district court's holding will require trial courts to give supplementary *Faretta* warnings every time there is an adverse development that will make self-representation more perilous. That is a false issue in this case because both the motion for self-representation and shackling occurred before trial and in the same hearing.

Superintendent Groose also argues that we affirmed a conviction in *United States v. Stewart,* 20 F.3d 911 (8th Cir.1994), where a pro se defendant was tried in shackles without a warning about the effect of shackles on his self-representation. The court in *Stewart* was unable to conduct a complete *Faretta* colloquy because the obstreperous defendant interrupted every such attempt. 20 F.3d at 913, 917. The trial court could hardly be held responsible for an incomplete warning in such a case. Moreover, in *Stewart,* the defendant had represented himself in shackles in another case. *See Stewart v. Corbin,* 850 F.2d 492, 495 (9th Cir.1988). He therefore had first hand knowledge of what he was getting into.

## II.

■ Groose next argues that the district court erred in holding that Abdullah's claims were not barred by the procedural default rule. The Missouri Court of Appeals reviewed Abdullah's claim pursuant to Mo. R.Crim.P. 29.12(b). Under that rule the Missouri court's review was only for "plain error" affecting "substantial rights" and resulting in "manifest injustice," a much less rigorous standard than would have pertained if Abdullah had preserved his objection. However, in the past we have held that Missouri plain error review constitutes review on the merits and therefore no procedural defect bars habeas review. *Williams v. Armontrout,* 877 F.2d 1376, 1379 (8th Cir. 1989), *cert. denied,* 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990); *accord Bannister v. Armontrout,* 4 F.3d 1434, 1445 (8th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994).

Groose contends that *Pollard v. Delo,* 28 F.3d 887, 889 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 518, 130 L.Ed.2d 423 (1994), directly contradicts *Williams* and *Bannister.* We think not. *Pollard* does not involve plain error review pursuant to Mo. R.Crim.P. 29.12(b), as do *Williams* and *Bannister.*[4] In *Pollard* the Missouri Court stated that claim was barred from review under Missouri law, and explicitly couched its review on the merits as an alternative holding and "as a matter of grace." *Pollard v. State,* 807 S.W.2d 498, 502 (Mo.1991). This distinction between plain error review and review as an alternative ground may be a fine one, but our case is clearly on the *Williams–Bannister* side of the line and we are bound by their precedent.[5]

## III.

■ Finally, Groose argues that we should apply harmless error analysis to the violation of Abdullah's right to trial counsel, citing *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). However, we are persuaded by *United States v. Allen,* 895 F.2d 1577, 1579–80 (10th Cir.1990). *Allen* holds a district court's failure to establish that a defendant's waiver of trial counsel was voluntary, knowing and intelligent is not subject to harmless error analysis. The Tenth Circuit based its decision on *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), in which the Supreme Court refused to apply harmless error analysis to a case in which a defendant was left *"entirely without the assistance of counsel"* on direct appeal. 895 F.2d at 1580 (quoting *Penson,* 488 U.S. at 88, 109 S.Ct. at 354). Obviously, being left without counsel at trial is as serious as lacking counsel on appeal. *Id.* Denial of trial counsel infects the integrity of the entire trial. *See Satterwhite v. Texas,* 486 U.S. 249, 256–57, 108 S.Ct. 1792, 1797–98, 100 L.Ed.2d 284 (1988). The weight of authority supports the *Allen* rule. *See United States v. Fant,* 890 F.2d 408, 410 (11th Cir.1989), *cert. denied,* 494 U.S. 1038, 110 S.Ct. 1498, 108 L.Ed.2d 633 (1990); *United States v. Balough,* 820 F.2d 1485, 1489–90 (9th Cir. 1987); *United States v. Welty,* 674 F.2d 185, 194 n. 6 (3d Cir.1982); *but see Richardson v. Lucas,* 741 F.2d 753, 757 (5th Cir.1984). *See generally* James Liebman and Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 27A.3 & n. 18 (1993 Cum.Supp.).

To the extent Abdullah's case involves denial of his right to self-representation, it is governed by the Supreme Court's reasoning that harmless error cannot apply where a court denies the defendant his right to self-representation. *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis.") *See Johnstone v. Kelly,* 808 F.2d 214, 218–19 (2d Cir.1986), *cert. denied,* 482

---

**4.** *Bannister* leaves open the possibility that there could be cases in which plain error review was not a waiver of the procedural default, 4 F.3d at 1445 n. 16.

**5.** Groose also cites dictum from *Stidum v. Trickey,* 881 F.2d 582, 584 (8th Cir.1989), *cert. denied,* 493 U.S. 1087, 110 S.Ct. 1151, 107 L.Ed.2d 1055 (1990). *Stidum* declined to consider the procedural bar question and is therefore not authoritative on this issue.

U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).

Therefore, we decline to apply harmless error analysis in this case.

## IV.

We affirm the grant of the conditional writ of habeas corpus.

MAGILL, Circuit Judge, dissenting.

I respectfully dissent from part I of the majority's opinion. I would reverse the district court because I believe its decision announced a new rule in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

## I.

*Teague* prevents a federal court from granting habeas relief to a prisoner based on a rule announced after his conviction has become final. *Id.* at 310, 109 S.Ct. at 1075. Since Groose argued that the district court fashioned a new rule, we "*must* apply *Teague* before considering the merits of the claim." *Caspari v. Bohlen*, — U.S. —, —, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994).

We apply a three-step analysis to determine whether *Teague* precludes the district court's decision. First we must determine when Abdullah's conviction became final. Then we "must '[s]urve[y] the legal landscape'" at that time to "determine whether a state court considering [Abdullah's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Id.* (internal quotations omitted) (citation omitted). Finally, if we conclude the district court announced a new rule, we must determine whether one of two narrow exceptions to *Teague* applies. *Id.*

The core issue is whether the district court's decision announced a new rule. If so, *Teague* bars it from applying here, as neither of the two narrow exceptions to *Teague* are applicable. For *Teague* purposes, "a decision announces a new rule 'if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Gilmore v. Taylor*, — U.S. —, —, 113 S.Ct. 2112, 2116, 124 L.Ed.2d 306 (1993) (citations omitted) (emphasis in original). A good faith extension of existing precedent constitutes a new rule as does a decision that is related to existing precedent. *Wickham v. Dowd*, 914 F.2d 1111, 1114–15 (8th Cir.1990), *cert. denied*, 501 U.S. 1254, 111 S.Ct. 2897, 115 L.Ed.2d 1061 (1991). A rule is considered a new rule if reasonable jurists could differ as to whether the rule is compelled by existing precedent. *Caspari*, — U.S. at —, 114 S.Ct. at 956; *Gilmore*, — U.S. at —, 113 S.Ct. at 2120 (O'Connor, J., concurring). The combination of two long-standing lines of precedent to form a third precedent which is related to both is also a new rule that violates *Teague*. *Wickham*, 914 F.2d at 1113–14. I believe that the majority overlooks the definition of a new rule when it determines that *Teague* is not applicable.

The majority determines that the district court's rule is not new based upon two long-standing lines of precedent: one deriving from *Faretta* and its progeny that a defendant's waiver of his right to an attorney must be knowing and intelligent, maj. op. at 694–95; and one from *Holbrook* recognizing the inherently prejudicial nature of requiring a defendant to be shackled during trial, maj. op. at 695. The majority then combines these two long-standing lines of precedent to determine that the district court should have inquired as to "whether Abdullah understood the effect shackling would have on his ability to represent himself." Maj. op. at 695. This combination of two separate well-established and long-standing precedents to form a new third requirement that is logically related to both lines of precedents is a new rule that is barred by *Teague*. *Wickham*, 914 F.2d at 1113–14. I believe that the only way this case could survive *Teague* is if one of these lines of precedents standing alone dictates the district court's decision.

### A. *Faretta* and its Progeny

The majority asserts that *Faretta* and its progeny compel the district court's decision. To determine whether this is so requires a

formulation of the district court's rule. The majority has phrased the district court's ruling as stating that a "defendant seeking to represent himself should be informed by the trial judge of the particular complexities and difficulties that the shackling causes." Maj. op. at 695. The opinion also states the essence of the district court rule as requiring "the general rule of *Faretta* [to] be applied to the particular facts in this case, including the difficulties that shackling would pose to self-representation." Maj. op. at 695.

It is well-settled that a criminal defendant has the constitutional right to represent himself and that in order to waive his right to counsel he must make a knowing and intelligent waiver. *Berry v. Lockhart*, 873 F.2d 1168, 1170 (8th Cir.1989). This requires the defendant be "made aware of 'the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Id.* (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)). The Supreme Court takes a pragmatic approach to determine whether a waiver is knowingly and intelligently made based upon the particular facts and circumstances surrounding the particular case. Factors to consider in this process include:

the defendant's age and education, ... other background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, ... and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.

*McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir.1985). In *United States v. Yagow*, this court cited 1 Bench Book for United States District Judges § 1.02 (3d ed. 1986) as a model of a *Faretta* inquiry. 953 F.2d 427, 431 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 103, 121 L.Ed.2d 62 (1992). The Bench Book colloquy only addresses disadvantages to proceeding pro se in general, not disadvantages specific to an individual defendant's case.[6]

Prior to the district court's decision, I am aware of no case that requires a trial court to include in its *Faretta* colloquy a warning of the dangers or disadvantages of proceeding pro se that are specific to his case.[7] The district court in this case is requiring the *Faretta* inquiry to include warnings about the particular disadvantages in this case (shackling), not the disadvantages of proceeding pro se in general. I believe this is a new rule, because it is not dictated by existing precedent. The rule is related to the

---

6. With respect to the dangers and disadvantages of proceeding pro se, the Bench Book advises trial judges to inquire whether the defendant is familiar with the rules of evidence and criminal procedure and to warn the defendant that he will be required to abide by these rules; to inquire whether the defendant is aware of the potential sentence in the case; to warn the defendant that the court "cannot tell you how you should try your case or even advise you as to how to try your case." 1 Bench Book for United States District Judges § 1.02(2)(g) (1991). The Bench Book also recommends that the trial court warn the defendant to the effect that in its opinion, the defendant "would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself." *Id.* § 1.02(2)(1). Nowhere in its suggested *Faretta* warnings does it state that the district court should also warn the defendant of any dangers or disadvantages specific to his particular case that the court is aware of.

7. In *Culverhouse v. Texas*, the Texas appellate court noted that the trial court warned the defendant of the disadvantages of proceeding pro se while shackled. 755 S.W.2d 856, 857 (Tex.Cr. App.), *cert. denied,* 488 U.S. 863, 109 S.Ct. 164, 102 L.Ed.2d 134 (1988). However, the court neither approved nor required trial courts to undertake such a specific *Faretta* inquiry.

Additionally, it appears that the Florida Supreme Court does not require a trial court to include in its *Faretta* colloquy a specific warning about the disadvantages of proceeding pro se in shackles. *See Diaz v. State*, 513 So.2d 1045, 1047 (Fla.1987), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1022 (1988). The court noted that the trial court warned Diaz about the difficulties of proceeding pro se, emphasizing the problems arising from his need of an interpreter. *Id.* The court rejected Diaz's claim of ignorance that self-representation "might prejudicially increase the shackles impact on the jury" as untenable. *Id.*

*Faretta* requirement of being informed of the dangers and disadvantages of proceeding pro se in general, but this is not sufficient to save it from the bar of *Teague*. At the very least, reasonable jurists could disagree as to whether or not *Faretta* and its progeny compel the district court's decision. Accordingly, I believe the district court announced a new rule in violation of *Teague*.

Furthermore, in this case the motion for the defendant to remain in shackles did not occur until immediately after defendant's motion to proceed pro se was granted. Consequently, at the time of the initial *Faretta* colloquy, it is unlikely that the trial court was aware that it would shortly be ordering the defendant to remain in shackles during the trial. In essence, the district court is requiring the trial court to supplement its initial *Faretta* colloquy once it became aware that the defendant would be shackled. So stated, this is clearly a new rule in violation of *Teague*.

#### B. Shackles

I agree with the majority's analysis of our long-standing recognition that "forcing a defendant to undergo trial in chains is 'inherently prejudicial,' ... and should only be tolerated in cases of dire necessity." Maj. op. at 695 (citations omitted). However, these precedents do not require any warning of the disadvantages of such shackling be given to the defendant. Accordingly, the long-standing precedent concerning shackling does not dictate the district court's rule.

### II.

I believe that the district court announced a new rule, which violates *Teague*. I disagree with the majority's conclusion that *Teague* is not applicable because there was compelling long-standing precedent existing at the time of Abdullah's conviction. I believe that the district court ruling takes two long-standing lines of precedents and combines them into a third, albeit related, rule. This is a new rule in violation of *Teague*. Consequently, Abdullah may not rely on this rule as a basis for habeas relief. For the foregoing reasons, I would reverse the district court's grant of the writ of habeas corpus.